## KENNEDY *against* GREGORY.

THIS cause was tried before *Smith* and *Brackenridge*, justices, at Nisi Prius in *June* 1803. It was an action on the case for a slander uttered by the defendant of and concerning the plaintiff in his business of school-master, " that he loved li-" quor," and " that he was given to drink," *per quod* he lost his scholars. The pleas were *not guilty* and *justification.* The evidence of the slander was the testimony of one *Samuel Brewster,* that on his asking the defendant if *Kennedy* was given to drink, he answered either " it is so," or "*they say* it is so." The counsel of the defendant then offered a witness to prove, in mitigation of damages, that before the publication of the words laid in the declaration, *he had told Gregory that the plaintiff was given to drink.* This evidence was objected to, and the judges were divided in opinion upon its admissibility. *Smith* J. thought it was inadmissible upon the issues then trying, but was willing that the defendant should have the benefit of it, reserving the point. *Brackenridge* J. thought it admissible in mitigation of damages; but he asked the defendant's counsel whether, from the case which the plaintiff had made to the jury, they thought their client stood in need of it. The evidence was not heard. The court then charged the jury that the words did not appear to have been spoken maliciously, but to have been used upon an examination of the plaintiff's character, in which the community was interested. The jury however found a verdict for the plaintiff, one hundred dollars damages.

*Saturday,*
December
31st.

In an action of slander where the proof is that the defendant in reply to a question implicating the plaintiff answered either " *It is so*" or " *They say it is so,*" the defendant may give in evidence in mitigation of damages that a person told him what he related. It seems also that even when the slander is spoken without reference, the defendant may in mitigation of damages shew that the slander was communicated to him by a third person. Vide *Morris* v. *Duane.*

*Ingersoll* obtained a rule to shew cause why there should not be a new trial, on three grounds: 1. That the verdict was against evidence. 2. That it was against the charge of the court. 3. That competent testimony had been overruled. And although it was stated by one of their honours, that the testimony which had been offered was waived after the question put by judge *Brackenridge*, the argument upon shewing cause turned almost exclusively upon the third ground; a majority of the court in bank being of opinion that the testimony was not waived.

*Ingersoll* and *Wells* argued for the defendant. *Hopkinson* and *Hare* for the plaintiff.

SHIPPEN, C. J. having been prevented by ill health from sitting on the argument, gave no opinion.

YEATES J. The material question to be considered in this case is whether evidence proper in itself on the pleadings has been refused by the court on the trial.

From the statement of the evidence made by the presiding judge, it appears that *Samuel Brewster* one of the witnesses, on the defendant finding fault with the conduct of the plaintiff, asked him whether he was given to intoxication. To which the defendant answered *either* that the plaintiff loved liquor, *or it was said so. David Newport* was offered to prove that he had told the defendant the plaintiff was addicted to drink; on which the court was divided. It has been contended that the answer to this question was waived by the defendant's counsel. But taking into view what dropped *from one of the members of the* court at the time, I am not disposed to put that construction on it. A due harmony between the bench and bar not only conduces to expediting business, but is in a great measure necessary in the administration of justice. Under the circumstances of the case therefore I do not look on the evidence as waived.

It is settled in 7 *T. R.* 17. that a plea of justification in slander under the communication of another is not good, unless the author is mentioned at the time of speaking the words; and in 2 *East* 426. it is resolved, that whoever would shelter himself under report, must also use the very words of his author, in order to give the plaintiff an action against him. A general

leave to justify by our practice is tantamount to a special plea of justification in *England;* and therefore it is clear that *Newport* could not with propriety answer the question on the ground of justification. But it is contended here that the testimony was not offered as a justification, but in extenuation of the damages for the words spoken. If the words laid and proved had been substantively and independently charged against the plaintiff by the defendant, I am strongly inclined to think that the present question could not be asked, *even to mitigate the damages,* on either plea then before the court; unless there had been leave to give the special matter in evidence, and notice of the intention of the party had been previously given. Because otherwise it would be a surprise on the plaintiff, and he could not come prepared to repel the evidence..

Here however one of the plaintiff's witnesses swore in the alternative, that the defendant declared to him *either* that the plaintiff loved liquor, *or it was said so.* And under these circumstances, I think it was competent to the defendant to shew by *Newport,* that *he had said so to him,* to take off all presumption that the charge was a fabrication of his own, *merely in mitigation of damages,* as to the words thus sworn to by *Brewster.*

I agree that new trials will be seldom granted in actions of slander. The peace of society requires that slander should be repressed. But in this case, the presiding judge having declared in his charge, that he should have been satisfied if the jury had given a verdict for the defendant, *or* if they *could* find for the plaintiff and should find reasonable damages, which evinced a measuring cast in his mind, and testimony admissible in my idea in its nature not having gone to the jury for their consideration, under the special circumstances of the case, I am of opinion that a new trial should be granted.

SMITH J. When *Newport* was offered to prove that he told defendant, plaintiff was given to drink, the court was divided upon the admissibility of the evidence; whereupon it was declared by the court that, agreeably to the practice on the circuit, the evidence was to be given, and the point whether admissible or not, reserved. The counsel who offered it, on being asked by the judge who was in favour of its admissibility, Do you need it? waived it.

But I will consider the question as if the court had ruled

1803.

KENNEDY
v.
GREGORY.

that it was not admissible, and as if there had been no waiver of it.

It is clear that in *justification* of the defendant it could not be admitted. " If I. S. publish that he hath heard generally without a " certain author that T. G. was a traitor or thief, there an action " *sur le case* lieth against I. S. for this, that he hath not given " to the party grieved any cause of action against any, but " against himself who published the words, although that in " truth he might hear them; for otherwise this might tend to a " great slander of the innocent. For if one who hath *læ. am phan-* " *tasiam,* or who is a drunkard, or of no estimation, speak scan- " dalous words, if it should be lawful for a man of credit* to " report them generally, that he had heard scandalous words " without mentioning of his author, that would give greater co- " lour and probability that the words were true in respect of the " credit of the reporter than if the author himself should be " mentioned; for the reputation and good name of every man " is dear and precious to him." 12 *Co.* 134. which case is recog- nised in 7 *T. R.* 19. by Lord *Kenyon,* in delivering the opinion of the court in *Davis* v. *Lewis,* which was an action of slander for speaking these words by defendant, of and concerning plain- tiff *in his business as a taylor,* " *I heard you were run away; a person has been here to tell me that you were run away.*" De- fendant *pleaded in justification* that before the speaking of the words he the defendant had heard and been told by one *D. Morris* that the plaintiff was run away, for which reason he spoke them; and on general demurrer judgment for the plaintiff. " *Per* Lord *Kenyon.* Whether this be considered on the authori- " ties or on the reason of the case, the justification cannot be " supported." He then cites the *Earl of Northampton's* case as in point. " Then it is said that it is sufficient to repel such ac- " tion, to disclose *by the defendant's plea* the person who told " him the slander; but that is clearly no justification after put- " ting the plaintiff to the expense of bringing the action. The " plaintiff can only impute the slander to the man who utters " it, if the latter do not mention the person from whom he " heard it. The justice of the case also falls in with the deci- " sions upon this subject. It is just that when a person repeats " any slander against another, he should *at the same time* de- " clare from whom he heard it, in order that the party injured " may sue the author of the slander."

But it is now discovered that although true it is this evidence cannot be admitted *to justify*, yet it ought to have been admitted in *mitigation of damages*.

It is truly said by Lord *Mansfield, Burr.* 1990. that *favourable cases make bad precedents.* Because on the trial the inclination of my mind was rather against the plaintiff, does it follow that I must incline to the admission of evidence, which I believe to be contrary to the rules of law properly understood and applied to the subject matter? In *Strange* 1200. in an action for words, on not guilty, defendant offered to prove the words to be true in mitigation of damages, which the Chief Justice refused to permit, saying that " at a meeting of all the Judges upon a case " that arose in the Common Pleas, a large majority of them " had determined not to allow it for the future, but that it " should be pleaded, whereby the plaintiff might be prepared " to defend himself as well as to prove the speaking of the " words. That this was now a general rule amongst them all, " which no Judge would think himself at liberty to depart " from, and that it extended to all sort of words, and not bare- " ly to such as imported a charge of felony."

I challenge ingenuity to point out one evil which would result from such evidence being given as matter of *justification*, which would not follow to almost the same degree, were it allowed in *mitigation of damages;* it would certainly follow to a very great degree.

A man whose declaration or even significant hint will be extensively believed goes round and makes such a representation of the plaintiff as in a short time reduces him and his family to the want of bread. The injured party brings an action against the man who has thus injured his reputation; the propagator of the slander lies by till the day of trial, and then he brings forward evidence to prove that some vile wretch, perhaps whose censure would be praise, told him the words which on his credit have been believed from the time he uttered them, but which, had he at first mentioned his author, would have been deemed unworthy of the least credit. But supposing the man who told the defendant the words, to be of equal credit with himself or even better, by his lying by till the trial the act of limitation takes place, and the injured man has no remedy against the original slanderer under whom the slanderer has sheltered himself: this will be the *general effect* of the evidence

M

1803.

KENNEDY
*v.*
GREGORY.

1803.

KENNEDY
*v.*
GREGORY.

offered, if admitted. If such evidence would lessen the damages one cent, it would so far deprive the plaintiff of an adequate remedy against the authors of his ruin. But in this case there is an additional reason against its admission. Two or three days after speaking the words, plaintiff and defendant both called at *Samuel Brewster's,* who repeated the words of which he gave evidence on the trial; even then defendant did not give a hint that any other person had mentioned them to him.

I conclude therefore that evidence cannot be given either in justification or in mitigation of damages, that a third person, not named at the speaking of the words, mentioned them to the defendant. A contrary decision or construction would open a *school for scandal throughout the state.*

At the trial the inclination of my mind was that there was not a sufficient proof of malice; but this was a fact arising from the evidence properly and solely within the cognisance of the jury. Their verdict proves that there was malice in defendant; and as juries as well as individuals are the best judges within their own exclusive province or profession, reflection induces me to believe that in this instance their judgment was more correct than mine.

Malice, malignity of mind, may be evinced in a thousand different ways. The defendant went round with the schoolmaster, by whom he wished to supplant the defendant, to different employers, and by sly insinuations did him as much injury as if he had made the most direct and pointed charge.

BRACKENRIDGE J. continued of opinion that the evidence should have been admitted in mitigation of damages. He assented to the law as laid down by Judge *Smith* with respect to pleading in justification, but thought it did not apply to the case. He was also of opinion that the verdict was against the weight of evidence.

Rule absolute. (*a*)

(*a*) Since the appointment of Chief Justice TILGHMAN, the opinion of the court in the case of *Kennedy* v. *Gregory,* has received his sanction in the following case at Nisi Prius.

### MORRIS *against* DUANE.

IN this cause, which was an action on the case for a libel, tried before *Tilghman* C. J. at Nisi Prius *March* 21st, 1808, the defendant offered in evidence a writing, purporting to be the copy of an anonymous letter which

1803.

Lessee of JENKS *against* BACKHOUSE.

UPON the trial of this ejectment before *Shippen* C. J. and *Smith* J. at a Circuit Court for *Bucks* in *May* 1802, the plaintiff shewed a regular title to the premises in question, being part of a large patent, in *Lawrence Growdon*, who by his will devised the residue of his estate, including the lands in controversy, to his two daughters *Grace* and *Elizabeth*. *Elizabeth* and *Thomas Nicholson* her husband, and *Grace* and *Joseph Galloway* her husband, who in his own right was entitled to one

A trust estate in Pennsylvania descends in case of intestacy, to the heir at common law.

from certain marks on the back of it was inferred to have been in the possession of *B. F. Bache*, and upon his death to have come to the defendant who succeeded him as editor of the Aurora in which the libel was published. The death of Mr. *Bache* and the defendant's succession to the newspaper were prior to the libel; and the object of the writing offered was to mitigate the damages by shewing that the defendant was not the inventor of the charge he had published against the plaintiff, but that this writing was in his possession at the time and led to the publication.

The principal argument offered by *Hopkinson* for the defendant was this: That the libel being charged in the declaration to have been *maliciously* and falsely *devised* as well as printed and published by the defendant, though it was not necessary for the plaintiff to prove the whole charge, yet the consequence of proving the whole would be damages proportionally high. It therefore was material to shew that the charge was not *devised* by him, for he thus shewed that the degree of malice was at all events less than if he had devised it. It could not be given in evidence to maintain the plea of *not guilty;* it was in strictness no *justification*, and therefore as it was material he should be allowed to offer it to the jury in mitigation of damages. He cited the case of *Kennedy* v. *Gregory,* and *Prick's* case *Cro. Jac.* 91. in *Brook* v. *Montague.*

The objections to this evidence by *Lewis* and *Meredith* who were of counsel with the plaintiff were, that the libel published by *Duane* contained no reference to a letter or to any other source of information, but was a substantive charge proceeding exclusively from himself, and therefore it should fall exclusively on himself; that in point of law the malice was proved conclusively by the false publication, and it was altogether irrelevant to shew an absence of personal malice, and of course a less or greater degree of it. That it could not legally weigh a particle in the defendant's favour that he had such a paper, when he had attempted to poison the mind of the public by stating the charge unequivocally and without reference. That on the contrary it aggravated the offence, as the reference might have furnished the plaintiff an opportunity of rescuing his character, by exposing the source from which the calumny proceeded. The case from *Cro. Jac.* was altogether different. There a clergyman recited from his pulpit, a story from

*Fox's* Martyrology, that one *Greenwood* for his perjuries and crimes had been killed by the hand of God. *Greenwood* was in church at the time, and afterwards brought an action for the words. But the clergyman pleaded not guilty, and it was held the action would *not lie,* by reason of the *occasion of publishing the words.* (The case of *Kennedy* v. *Gregory* was not in court, and therefore was not noticed.)

TILGHMAN C. J. This point is not new to me, it has occurred on the circuit and been considered though not absolutely decided by me. The effect of any evidence which a defendant may offer is with the jury; the competency of it, with the court. The question in this case is, whether the defendant is entitled to offer to the jury this letter, with the explanations, for any legal purpose connected with the cause. It certainly cannot be offered to prove the plea of *not guilty;* and it is no legal *justification.* But still, is it not material? Can it be, that like damages should be given against two defendants, one of whom received his information from such sources as were entitled to a certain degree of credit, while the other devised it by his own wicked imagination? I think it cannot. Such evidence certainly goes to the degree of malice, and must weigh with the jury according to the circumstances which attend it. Whether these circumstances are such as ought in reason to mitigate the damages, they will decide. In the case of *Williams* and wife v. *Mayer* and wife, (Circuit Court, *Mifflin* county, *May* 1806) I expressed the inclination of my mind, that the defendants who were sued for slander in charging the plaintiffs with felony, might on *general principles* give evidence of circumstances which had induced a suspicion of felony; although in that case the evidence was clearly admissible by way of rebutting something which had been proved, in order to aggravate the damages, by the plaintiffs, and therefore the *general point* was not decided. Since that I have observed in 2 *Peak's Comp. of Evid.* 287. it is said to have been ruled by *Eyre* C. J. in the case of *Knobel* v *Fuller,* that the defendant may in mitigation of damages prove, on the general issue, such facts and circumstances as shew a ground of suspicion not amounting to actual proof of the plaintiff's guilt. I adhere to the opinion which I had formed in the case of *Williams* v. *Mayer,* and admit the evidence.