## TREAT *against* BROWNING and wife.

Where the words laid in an action of slander, were, that " the plaintiff had had a bastard child," and the words proved were, " If I have not been misinformed, the plaintiff had a bastard child ;" it was held, that the charge in both instances was constructively the same.

In an action of slander, reports that the plaintiff had committed the offence imputed to him by the words alleged, which were in circulation before the speaking of such words, are admissible only as evidence of general character.

In such action, the defendant cannot give in evidence, in mitigation of damages, that he was not the author of the story which he propagated, but first heard it from another person.

Where the defendant in such action, offered to prove, that subsequent to the speaking of the words, and before the commencement of the suit, he named to the plaintiff the author of the words ; it was held, that such evidence was inadmissible.

Where the defendant in action of slander for charging the plaintiff with fornication, offered to prove, on the general issue without notice, for the

purpose of mitigating damages, that " the plaintiff had frequently left her bed in her father's house, in the night season, and lodged in a bed with a young man, in an adjacent store ; that she had been detected in a wanton and lascivious situation with the same young man, in a secret place in a field among broom-corn ; and at another time, in a similar situation, on a hay-mow ;" it was held, that such evidence amounted to a justification of the charge, and was, therefore, inadmissible.

Where a witness, called to impeach the character of another witness, having testified that his character was not good, was asked, on cross-examination, if he had not before given a certificate that his character was good ; to which the party objected, but the objection was overruled, and the witness answered in the affirmative ; it was held, that this was no ground for a new trial, because the answer of the witness was not inconsistent with his former testimony, and did not, therefore, tend to disparage him ; and because, if it did, though it would entitle the witness to his privilege, it would not affect the competency of the evidence.

This was an action of slander, tried at *Brooklyn, September* term, 1821, before *Peters*, J.

The words laid in the declaration, as spoken, by the defendant, *Catharine Browning*, of the plaintiff, *Eliza S. Treat*, were the following : " She had a child in the city of *New-York* ; and her father is supporting it." " She has been guilty of fornication ; and has had a bastard child." " She was pregnant with a bastard child ; and was, by her parents, carried away from home, for the purpose of concealing her pregnancy, and the birth of the child, of which she was delivered in the city of *New-York* ; and I have seen a man in *New-York*, who has seen the child ; and the child is supported by her father, *Amos Treat*." The defendants pleaded the general issue, without notice of justification.

The plaintiff having proved, by sundry witnesses, the speaking of the words, the defendants, to shew, that they were not spoken in the same sense and manner as testified to by those witnesses, introduced the testimony of *Gustavus F. Davis*, that he was present, at the time referred to, by the same witnesses, and heard the conversation that took place ; that during such conversation, he heard the defendant *Catharine* say, in substance, that " if she had not been misinformed, *Eliza Treat*, the plaintiff, had a child in *New-York*, and that her father was supporting it there ;" upon which she was checked, by her husband, in these words—" Well, well, wife—let it all go—say nothing about it ;" to which she replied—" Well, Mr. *Browning*, as I do not know the truth of it ; but that is what they do say." *Davis* also testified, that Mrs. *Browning* was in anger, when she spoke the words ; that

*Windham,*
July,
1822.

Treat
*v.*
Browning.

she spoke them with emphasis, and appeared desirous of having them gain belief. Upon being asked if Mrs. *Browning* did not, at that time, make a reference to some person, who had seen the child in *New-York*, he answered, that then, or at some other time, when he had heard her relating the same story, she said, that " some person had been at *Welcome Browning's*, who had seen the child in *New-York*, and knew the street in which it was boarded." The defendants' counsel prayed the judge to instruct the jury, that the words, as proved by *Davis*, did not support the declaration; because they were not spoken in the same sense and manner as therein laid. But the judge did not so instruct the jury.

The defendants offered to prove, that previous to the speaking of the words, as proved by any of the witnesses, Mrs. *Browning*, the wife of *Welcome Browning*, and other persons, had told her the same story; that she was not the original author of it; but that it was generally reported by others. To the competency of this testimony, any farther than as such reports went to constitute general character, the plaintiff objected; and the judge rejected such testimony for other purposes than to shew, that the plaintiff's character for chastity was bad. For the latter purpose, the defendants were permitted to adduce testimony; and in the course of the trial, on the examination and cross-examination of all the witnesses in relation to the plaintiff's character for chastity, the origin, rise and progress of reports unfavourable to her character, were gone into, by the defendants' counsel; and they had, in this way, the full benefit of all such reports tending to impair her character for chastity.

The defendants further offered, in mitigation of damages, to prove, by the testimony of sundry witnesses, that before the speaking of the words mentioned in the declaration, the plaintiff had frequently left her bed in her father's house in the night-season, and lodged in bed with a young man in an adjacent store; that she had been detected in a wanton and lascivious situation with the same young man, in a secret place, in a field, among broom-corn, and at another time, in a similar situation, with the same young man, upon a haymow in a barn. This testimony, being objected to, by the plaintiff, was rejected by the judge.

The plaintiff having used the testimony of *Elisha S. Bill*, to prove the words spoken, the defendants introduced *Roswell Parks*, as a witness, to impeach the character of *Bill* as

to truth ; and *Parks* having sworn, that *Bill's* character was not on a par with that of mankind in general, the plaintiff, on cross-examination, asked him, if, at a certain time within two years, he had not, upon a settlement of an action of slander, which *Bill* had commenced against him, either given to *Bill* a certificate, that his character for truth was then good, or declared the same thing, in presence of witnesses. To this question the defendants objected ; but the judge admitted it ; and it was answered, by the witness, in the affirmative.

The defendants offered to prove, that the defendant *Catharine*, before the commencement of the action, but subsequent to the speaking of the words, held a conversation with *Amos Treat*, the father of the plaintiff, in which she told him who the author of the story was, and from whom she heard it ; but the judge, on the objection of the plaintiff, refused to permit the conversation on that subject to be given in evidence.

The plaintiff obtained a verdict for 1000 dollars damages ; and the defendants moved for a new trial, on the ground that the several decisions of the judge before stated, were incorrect.

*Daggett* and *Lanman*, in support of the motion, contended, 1. That the judge ought to have instructed the jury, that if they found that the words were spoken in the manner testified to, by *Davis*, the declaration was not supported, and the plaintiff could not recover. The words stated in the declaration charged the fact directly, and without qualification, that the plaintiff had had a bastard child in *New-York*. The words proved by *Davis* were—" *if I have not been misinformed*, the plaintiff had a child," &c. According to the declaration, Mrs. *Browning* asserted *a fact* : according to the testimony of *Davis*, she stated the information she had received—*i. e. a report*. Now, whether the latter words were actionable or not, they were not the words alleged ; nor were they words, which, if actionable, required the same measure of damages as the words alleged.

2. That the evidence offered by the defendants, to prove that Mrs. *Browning* was not the author of the story, but that she had received it from others, ought to have been admitted, not merely as affecting the general character of the plaintiff, but to shew want of malice, and thus to mitigate the damages. Is it reasonable or just, that a person, who utters only what is already in every one's mouth, and communicates it

*Windham,*
*July,*
*1822.*

*Treat*
*v.*
*Browning.*

*as a report*, should be subjected to the same damages as the malicious inventor of the story ?  It is true, that previous reports do not constitute a *justification ;* with respect to which the law is very strict.  This was decided, and this only, in the case referred to in *Bul. N. P.* 10.; which is the sole authority for the *dictum* in 1 *Swift's Dig.* 487.  But there is no reason why previous reports should not be given in evidence *to mitigate the damages ;* but the best reasons why they should be : they shew that the defendant was less culpable, and that the plaintiff had less character to lose.  Earl of *Leicester* v. *Walter*, 2 *Campb.* 251.

3.    That the evidence offered by the defendants, of particular acts of the plaintiff, which were of a wanton and lascivious nature, and which might reasonably induce a belief or suspicion, that the plaintiff was guilty of the offence imputed to her, ought to have been received in mitigation of damages. These acts of the plaintiff *occasioned* the speaking of the words, which she complains of.  Is she now to recover the same measure of damages, as though her conduct had been blameless ?  This would reduce the characters of the pure and of the impure to a common level.  The rule of law on this subject, is, that in order to make out a *justification*, the defendant must prove the precise offence imputed to the plaintiff ; but on the general issue, he may prove, in mitigation of damages, any acts of the plaintiff similar to the offence imputed, which shew a ground of suspicion, and tend to diminish the presumption of malice.  *Knobell* v. *Fuller, Peake's Evid.* 287, 8. *append. xcii. Morris* v. *Duane*, 1 *Binn.* 90. *n.* ———— v. *Moore*, 1 *Mau. & Selw.* 285.

4.    That the testimony of *Parks*, in relation to his having given a certificate, or made a declaration, inconsistent with the testimony, which he had just before given in court, ought not to have been received.  The general rule is, that a witness cannot be called upon to impute to himself a crime, or to bring a reproach upon himself.  But here the witness was called upon to furnish evidence against himself, of his having sworn falsely.

5.    That the conversation between the defendant *Catharine* and *Amos Treat* ought to have been received.

*Goddard* and *Brainard*, contra, contended, 1. That the omission of the judge to charge the jury upon the effect of *Davis's* testimony, was no ground for a new trial.  First, it

is the province of the jury to judge of the sense of the words,
and the manner of speaking them.   2 *Selw. N. P.* 1166.
Secondly, the words testified to, by *Davis*, were substantial-
ly the same as those laid in the declaration, and proved by
the other witnesses.   *Miller* v. *Miller*, 8 *Johns. Rep.* 74.
Thirdly, the words were proved as laid, by *other* witnesses;
and so the jury, under the direction of the judge, have found.
It was not necessary for him to charge the jury upon the
testimony of every witness separately.   Suppose there are
ten witnesses, nine of whom swear to the words as laid, and
one recollects them differently ; is it necessary for the judge
to tell the jury, that the evidence of this one witness does
not support the declaration ?

*Treat
v.
Browning.*

2.   That the evidence offered to shew what Mrs. *Welcome
Browning* said, was not admissible ; because she was not re-
ferred to, *at the time* of speaking the words.   *Woolnoth* v.
*Meadows*, 5 *East* 463. 469.   The Earl of *Northampton's*
case, 12 *Co. Rep.* 134.   *Davis* v. *Lewis*, 7 *Term Rep.* 17.

3.   That reports respecting the plaintiff, any farther than
as they affected her general character, were not admissible in
evidence, and were properly rejected.   *Bul. N. P.* 10.   *The
King* v. *Holt*, 5 *Term Rep.* 436.   *Wolcott* v. *Hall*, 6 *Mass.
Rep.* 514. 518.   1 *Swift's Dig.* 487.   2 *Phil. Evid.* 109. 110.

4.   That evidence of the particular acts stated in the
motion, was properly rejected ; first, because those acts fur-
nished presumptive evidence of the truth of the charge.
Secondly, because the testimony in question imputed other
crimes to the plaintiff than those alleged in the declaration—
*viz.* lascivious carriage, &c.   Thirdly, because no such evi-
dence can be received in justification, or in mitigation of dam-
ages, without notice.   *Underwood* v. *Parks*, 2 *Stra.* 1200.
*Shepard* v. *Merrill*, 13 *Johns. Rep.* 475.   *Rodriguez* v. *Tad-
mire*, 2 *Esp. Rep.* 721.

5.   That the question put to *Parks*, on cross-examination,
was unexceptionable.   It was according to the common
course, in sifting a witness ; and his answer either way would
not impeach him of a crime.   Besides, if it would have the
effect, it would only furnish to the witness a ground of ex-
emption from testifying : it would not render his testimony
incompetent ; and if he did not choose to insist on his privi-
lege, the party could not complain.

6.   That the conversation between Mrs. *Browning* and
*Amos Treat*, subsequent to the speaking of the words, could

*Windham,*
*July,*
*1822.*

Treat
*v.*
Browning.

have no effect upon the right of recovery, or the damages, in this case.

HOSMER, Ch. J. The plaintiff's declaration contains three sets of words, of precisely the same import; each of them, in substance, comprising the charge of fornication.

1. One *Davis,* a witness adduced by the defendants, testified to the speaking, by *Catharine Browning,* of the words alleged, with the prefatory expression, "If I am not misinformed." The source from whence the imputation originated, whether from the wicked imagination of the speaker, or by information derived from others, has no materiality on a question, which respects the meaning of the words published. If a person utter of another, " She is a prostitute," or " If I am not misinformed, she is a prostitute," the essential charge, in both instances, is constructively the same, or this unhappy consequence must inevitably result, that, by a mode of phraseology, which indicates, that the person speaking had heard the crime imputed, slander might be propagated with impunity. If this were not the legal construction, malice would not desire, nor could it devise, a better shield of protection from suit for the publication of the most wanton calumny. The point in question, has been long and uniformly settled, so that, on this subject, no doubt can or ought to exist. *Herle* v. *Osgood,* 1 *Vent.* 50. *Petersborough* v. *Mordant,* 1 *Lev.* 277. *Stich* v. *Wisedom, Cro. Eliz.* 348. *Sydenham* v. *Man, Cro. Jac.* 407. *Oldham* v. *Peake,* 2 *Bla. Rep.* 759. *Peake* v. *Oldham,* in err. *Cowp.* 275. *Miller* v. *Miller,* 8 *Johns. Rep.* 74.

2. In mitigation of damages, the defendants offered evidence of general reports, that the plaintiff had committed the alleged crime ; which the judge admitted, but *as proof only of character.* It is now insisted, that by this common fame or reputation, (for it was nothing more) the charge of fornication was proved ; and that the restriction, under which the testimony had been received, was incorrect. To this argument, it may be conclusively replied, that, if the evidence went beyond the proof of reputation, it should have been rejected ; as there had been no notice of an intended justification. *Bailey* v. *Hyde,* 3 *Conn. Rep.* 463. The discrimination of the court, however, was sound, by admitting reports to have all the efficacy they possess. They are hearsay only, and evincive of character, which alone is suscepti-

ble of evidence, founded on the opinions of men ; but *specific facts* are established, by testimony founded in knowledge, and not on common fame.   On a critical examination, it is apparent, that the cases which have sanctioned the admission of general reports, have not gone beyond these bounds.   Earl of *Leicester* v. *Walter*, 2 *Campb.* 251.  ———— v. *Moor*, 1 *Mau. & Selw.* 285.

3.   The court rejected testimony offered to prove, in mitigation of damages, that prior to the publication of the words by the defendant *Catharine*, she *had heard them* from a Mrs. *Browning ;* and this has given rise to another objection.

The cases, which have been decided on this subject, do not harmonize ; but the preponderance of the determinations, in my judgment, is against the admission of the proffered testimony.     In *Leister* v. *Smith*, 2 *Root* 24. hearsay was admitted in mitigation of damages ; but from the very brief report of the case, comprising neither the argument, the ground of decision, nor the citation of any authority, it was, obviously, too little considered, to establish a doctrine of great practical importance.     And in *Morris* v. *Duane*, 1 *Binn.* 90. in a case at *Nisi Prius*, before Ch. J. *Tilghman*, it was adjudged, that in mitigation of damages, the defendant might prove, that he did not originally devise a libel, of which he was the publisher.     On the other hand, in *Miller* v. *Spencer*, 1 *Holt* 534. evidence of the above description, offered by the defendant, was repelled by Ch. J. *Gibbs*, who observed, in giving his opinion, that " If an action be brought against *A.* for calling *B.* a thief, it is no defence for *A.*, under the general issue, to prove, that he was told so by *C.   A.* is answerable for the full measure of his slander."     To the same effect was the determination in *Wolcott* v. *Hall*, 6 *Mass. Rep.* 514. ; and in assigning the reasons, it was said, by *Parsons*, Ch. J. : " The plaintiff could have no notice from the pleadings to meet this evidence ; and when regularly seeking redress for an injury from the defendant, he might be overwhelmed by particular scandal, which could not be traced to any author ; or, if it could, might be disproved."   In *Kennedy* v. *Gregory* 1 *Binn.* 85. the same opinion was embraced, by two judges out of three, although from the special circumstances of the case, the testimony was admitted.   " I challenge," said *Smith*, J. " ingenuity to point out one evil which would result from such evidence being given as matter of justification, (without notice,) which would not follow, to almost the same degree,

were it allowed in mitigation of damages ;" and I am incapable of resisting the same conclusion.

When I consider the case on principle, I am strongly impelled to the opinion, that the offered testimony was rightly rejected.    The argument for its admission proceeds on the ground, that the evidence would diminish the presumption of malice, and of consequence, lessen the damages.    It is an indisputable truth, that evidence, which falls short of a justification, *may* be competent to mitigate damages ; and that to this end, such facts and circumstances as show a ground of suspicion, not amounting to actual proof of guilt, are admissible in evidence.    *Knobell* v. *Fuller, Peake's Evid.* 287, 8.    But the case supposed is not the one on trial ; for the declaration of Mrs. *Browning,* which occasioned one of the defendants to publish the words in suit, are not " facts or circumstances, which show a ground of suspicion," within the meaning of the above determination.    It likewise, must be admitted, that facts, which tend to diminish the presumption of malice, are *sometimes* competent proof ; and by the defendant it is imagined, that they always are ; but this supposition is evidently unfounded.    Malice, undoubtedly, is an essential ingredient in the action of slander ; and, in all cases, where the degree of this property of the mind appears in evidence, it will affect the damages.    But the question now under discussion, is not what is the *effect* of evidence, when lawfully admitted ; but it is, whether mere hearsay, of which the plaintiff had neither notice, knowledge, nor anticipation, is competent testimony, because, if received, it will lessen the presumption of malice. Common sense and natural justice, speak a very different language.    If the defendant had published of the plaintiff, that she was a *strumpet ;* he could not, in mitigation of damages, prove her to be a *thief ;* or if he had charged her with being a *procuress,* he might not show, that she was a *prostitute.*    So, if *arson* had been imputed, it would be incompetent testimony, that the plaintiff was a *drunkard,* or a *gambler,* or a *forger of bills,* or a *perjured woman.*    *Hilsden* v. *Mercer, Cro. Jac.* 677.    *Smithies* v. *Harrison,* 1 *Ld. Raym.* 727.    *Bull. N. P.* 9.    *Andrews* v. *Vanduzer,* 11 *Johns. Rep.* 38.    Now, in all the cases put, the imputation of criminal mis-conduct, being pointed at a person of notorious profligacy, would be less indicative of malice, or wickedness, (its legal acceptation, *Rex* v. *Oneby,* 2 *Ld. Raym.* 1487.) than if it had been referred to one of irreproachable conduct.    It cannot, therefore, be a

correct principle, that evidence, which diminishes the presumption of malice, is *always* admissible. But, that it should be received, when it does not operate as a surprise on the plaintiff, and take him unprepared, is, in my opinion, a rule perfectly rational and just. This principle will impart to a person, who has injured another, by the utterance of slander, all the defence, which can be desired, compatibly with that protection of character, which ought ever to be a primary object; and, on the other hand, it will secure the administration of justice to the plaintiff, who has been maligned, by false and unwarrantable representations.

The case of *Maybee* v. *Avery*, 18 *Johns. Rep.* 352. has been thought to establish a different principle; but the question there decided is misconceived. Under a special notice of justification, evidence which fell short of proving the truth of the words spoken, was permitted to be taken into consideration, in the estimate of damages. The testimony having been legally admitted, it was fit that it should be made effectual, to every legitimate purpose. But the question, in that case, was on *the effect* of lawful testimony; in this, it is, whether the evidence offered *is lawful*, and of consequence, admissible. The precise diversity lies between the weight of testimony, and the propriety of its reception; and the object of determination has no unity in the two cases, but a marked and essential difference. Now, that the defendant heard the slander in question from a Mrs. *Browning*, was not within the issue; nor could have it been anticipated, as the unqualified charge made on the plaintiff was, that she had committed a direct act of fornication. The offered proof was a surprise on the plaintiff, which she could not have been prepared to repel, however repellible it might have been; and the admission of such testimony would evince a wanton disregard of reputation, one of the first of human blessings. It is by far more just, that the defendant *Catharine*, who made an unqualified charge on the plaintiff, by a direct affirmation, and on her own personal credit, thus virtually assuming the responsibility of it, should, as was very expressively said by Ch. J. *Gibbs*, " be answerable for the full measure of her slander."

4. The defendant offered to prove, in mitigation of damages, that before the words charged were spoken, " The plaintiff had frequently left her bed in her father's house, in the night season, and lodged in a bed with a young man, in

*Windham,*
*July,*
*1822.*

Treat
*v.*
Browning.

an adjacent store ; that she had been detected in a wanton and lascivious situation with the same young man, in a secret place in a field among broom-corn ; and at another time, in a similar situation on a hay-mow." I will select one objection only, against the admissibility of the testimony offered. The above facts, by a strongly probable presumption, establish the truth of the words alleged. The forsaking of her own bed, at midnight, and going to that of a young man in an adjacent store, and lodging with him ; the wanton and lascivious situation in a corn-field, and on a hay-mow, with the young man ; lead to the same conclusion. If any thing short of this were intended to have been done in those places of secrecy and suspicious omen, it should have been definitely mentioned. In absence of all explanation, the evidence offered, by a fair and reasonable construction, amounts to a justification of the words, on which the plaintiff's suit is founded ; and without notice, the truth of the charge is not admissible. *Underwood* v. *Parks,* 2 *Stra.* 1200. *Bailey* v. *Hyde,* 3 *Conn. Rep.* 466.

5. Relative to the certificate of *Parks,* the evidence was rightly received. Between the testimony of the witness, that the character of *Bill* was below the common level, and that, *at a former period,* the witness had admitted his reputation to be good, there was no inconsistency. If there had been, the witness should have claimed his privilege of exemption from the testifying in disparagement of himself, and not the defendants have objected to the admission of his evidence.

6. The offer of the defendants *subsequent* to the propagation of the slander, to name the author of the words spoken, would not, by retrospect, extinguish or lessen the injury perpetrated ; and, on no principle, could have been received.

The other Judges were of the same opinion.

New trial not to be granted.