IN THE

# DISTRICT COURT

FOR THE

## CITY AND COUNTY OF PHILADELPHIA.

### MARCH TERM 1836.

### STEEVER v. BEEHLER.

March 8, 1836.

*Rule to show cause why a new trial should not be granted.*

In an action of slander, the defendant, *under the general issue,* and without giving notice of special matter, may prove in *mitigation* of damages, a state of circumstances inducing heat and passion, in order to show an absence of deliberate malice.

But the proof must be confined to those circumstances only which form, in point of *time* and *character*, a part of *one and the same transaction,* on the happening of which the slanderous words are spoken.

Excessiveness of damages, where the verdict is manifestly the result of passion, prejudice, partiality or corruption, is a sufficient reason for ordering a new trial.

THIS was an action of slander, tried before JONES, J. The verdict was for the plaintiff, and the defendant moved for a new trial. The rule was argued at length by

*C. Ingersoll* and *Miles,* for the plaintiff, and
*Keemlé* and *J. M. Scott,* for the defendant.

Authorities cited on the argument, were: Underwood *v.* Parke,

[Steever v. Beehler.]

2 *Strange* 1200; *Starkie on Slander* 326; Kennedy *v.* Gregory, 1 *Binn.* 87; Morris *v.* Duane, 1 *Binn.* 90, *note*; Smith *v.* Bucecker, 4 *Rawle* 295; *Rules D. C., No.* 36; *Graham on New Trials;* 3 *Starkie's Ev.* (*Metcalf*) 1460; 2 *Saunders's Pl. and Ev.* 387, *and cases therein cited*; Leicester *v.* Walter, 2 *Camp.* 251; Waithman *v.* Weaver, 1 *D. & R.* 10, *per Abbot, C. J.*

The opinion of the Court (which states all the facts) was delivered by

STROUD, J.—This is an action on the case *for slander.* The declaration contains three counts, in one of which the words are laid to be these : " *You are a villain and a swindler, and you conspired with others to cheat me.*" The other counts are *substantially* the same, varying however suficiently to show that the proof, which was made by three witnesses, referred to three distinct utterances. The parties met at the store of one of the witnesses, when the defendant addressed the plaintiff, in the presence of this witness only : " *You said yesterday that I was too hard with Mr M'Caraher : you are a liar, and I believe you are conspiring with others to cheat me out of my money.*" The place at which this was spoken was at the corner of two of the principal streets of the city, in the neighbourhood of the plaintiff's usual residence, and the tone of the defendant was so boisterous, and his conduct in other respects so turbulent, that a crowd of fifty persons was drawn to the spot in a few minutes. Two of the witnesses, one of whom lived at the distance of five doors and the other on the opposite side of the street, were attracted from their breakfast by the noise and violence of the *defendant*; for the plaintiff, according to all the testimony, remained passive, although the defendant, in addition to the language used, threatened an assault upon him. In the hearing of the whole crowd, the slanderous charge, accompanied with other gross and insulting expressions, was spoken *twice.* The plaintiff was at the time, and had been for nine or ten years previously, a confidential clerk in a house extensively engaged in trade, and the defendant was stated, by one of his own witnesses, to be a sugar refiner, carrying on business in his own establishment. This witness, as also one of the plaintiff's witnesses, testified, that a few days after the slander was uttered, and as it would appear after the suit had been instituted, the defendant requested them, respectively, to call on the plaintiff, and express his regret for what he had spoken, and his willingness to make an apology to him for his conduct on the occa-

sion.   Communications to this effect were accordingly made, but the plaintiff replied that he considered himself greatly insulted, and a *private* apology would not be sufficient.   No other material evidence was received on the trial, but the defendant offered, under the plea of " not guilty, with leave to give the special matter in evidence," (but without having given any notice of special matter) certain evidence in the order and manner particularly set forth in the reasons filed for a new trial.   This evidence was overruled by the judge.  Connectedly stated, the evidence offered appears to be this : " that the defendant, on the 28th of January 1833, made a promissory note for 884 dollars 21 cents, in favour of, and *for the accommodation* of Mr M'Caraher ;  that this note was in the handwriting of the plaintiff, and had been signed by the defendant at the solicitation of the plaintiff ; that when it came to maturity, it was renewed, by the defendant, for a period which had not expired when Mr M'Caraher made an assignment for the benefit of his creditors ; that by this assignment (which is dated July 19th, 1833, and was comprised in the offer of the defendant) Mr Richards, one of Mr M'Caraher's assignees, was preferred for so large an amount, that the defendant, as a creditor of Mr M'Caraher for the above mentioned note, (and perhaps other notes) was not likely to receive any part of his debt ; that the plaintiff was, at the time when the note of January 28th, 1833 was given, long before, and afterwards up to the date of the assignment of Mr M'Caraher, in the employment of Mr Richards (being his chief clerk) ; that the defendant had had a conversation with Mr Richards, in regard to Mr M'Caraher's assignment within forty-eight hours of the time when the slanderous words were spoken, and that it was in a conversation relative to this assignment, and *under the influence* of his losses, that he used these words."

The judge charged the jury at some length ; to a single remark, only of which has any objection been taken.   This will be readily understood by one of the reasons assigned for a new trial, which is this : " because, his honour, in charging upon the effect which ought to be given to the *apology* made by the defendant, limited his instruction upon that point to the single remark, that an apology did not expunge the offence, and that nothing but the verdict of a jury could do that ; thus leaving them uninformed as to the legal difference between a wrong persevered in and one retracted."

The jury found a verdict for the plaintiff, and assessed the damages at 2000 dollars.

A new trial has been moved for on several grounds.   1. The re-

[Steever v. Beehler.]

jection of the evidence offered by the defendant.    2.  The charge of
the court as above mentioned.    3.  That the damages are excessive.

1.  The purpose for which this evidence was offered, was stated
simply to be in mitigation of damages ; but the precise ground upon
which its reception was claimed, was not intimated by the defendant,
nor asked by the plaintiff, as it rightly might have been.   If there-
fore it was competent at all upon the pleadings, it ought to have
been admitted.   Richardson v. Stewart's Lessees, 4 *Binn.* 200.

The extent of the *general issue* in slander, has, in a degree not
easily explained, divided the minds of the greatest judges.   It seems
to have been originally held, that it covered every ground of defence
which could be legally taken.   And such is, undoubtedly, the rule
in regard to actions on the case generally.   Bird v. Randall, 3 *Burr.*
1353.   In Smith v. Richardson, *Willes* 20, the words charged im-
ported a *felony* ; and, on the trial, the defendant offered to prove,
under the *general issue*, in mitigation of damages, the *truth of the words,*
and that the plaintiff was really guilty of the *felony* imputed to him.
The judge overruled this evidence, but reserved the point for the
opinion of the whole court.   As a new case, and one of great con-
sequence, the opinion of the *twelve* judges was taken upon it, when
it was found that *eight* of these sustained the rejection, and *four*
thought the evidence ought to have been admitted.   The reasons
urged on both sides of the argument, are stated with great perspi-
cuity and full force, in the report just mentioned.

The import of " not guilty," was alleged on the one side to be
nothing more than that the defendant *did not speak the words,* while
on the other, "it was said that words are always laid to be spoken
*falsè et malitiosè,* and that, therefore, any evidence proving them not
to be so, ought to be admitted."   This argument, to my mind
wholly unanswerable, was overruled ; and in a subsequent case,
Underwood v. Parke, 2 *Strange* 1200, Chief Justice Lee, who had
been in the minority in Smith v. Richardson, with the deference
which becomes a truly great mind, declared, that it had been agreed
among the judges, that a *justification,* when the party intended to
rely upon the truth of the charge made, must be *specially pleaded,*
and that this rule " extended to all sorts of words, and not barely to
such as imported a charge of *felony*" (which was the extent of the
decision in Smith v. Richardson, the nature of the slander there
calling for nothing more to be then decided).   This continues to be
the law of the English courts, and obtains, I believe, throughout

the states of our union.  But, with this exception, and the single addition of the statute of limitations, which must always be specially pleaded, unless otherwise directed by the legislature, any defence of which the defendant may avail himself at all, may be given in evidence, in the English courts, under *the general issue.*   1 *Chitty's Pl.* 488 ; *Starkie on Slander* 326.   And this I consider to be the law in this state, since no express decision to the contrary has been made ; and the opinion of Chief Justice Tilghman, in Morris *v.* Duane, 1 *Binn.* 90, note *a,* is founded on the general principle recognised in England.

I have been led to these remarks, because, in the argument before us for the exclusion of the testimony offered, some reliance was placed upon the 36th rule of this court, which requires ten days' *notice of special matter* intended to be offered on the trial, under the *general issue.*   And in Kennedy *v.* Gregory, 1 *Binn.* 87, Yeates, J. intimates an opinion which gives some countenance to this argument. But the obvious meaning of this rule is merely to permit a NOTICE of *special matter* to be substituted for a *special* PLEA.   A special plea however, adapted to the facts offered in evidence by the defendant, would be a novelty.   In the omission to give notice, therefore, the defendant's counsel are chargeable with no error.   If the evidence were admissible *at all,* it was so under the *general issue.*

*Malice* is the gist of this action.   This has always been the law. The declaration would be defective, unless it were distinctly averred. Evidence therefore which legitimately conduces to the proof of this, either *in a great or a small degree,* falls directly within the scope of the issue between the parties.   It is on this ground that acts and declarations of the defendant, which exhibit a *great* degree of malice against the plaintiff, may be proved by the plaintiff.   And the very argument used by Chief Justice Tilghman, in Morris *v.* Duane, in favour of the reception of the testimony there offered, was, that it tended to show a *less* degree of malice in a defendant to *report* a slander than to *invent* it, and such evidence should therefore go to the jury as a circumstance to *mitigate* the damages.

Were the facts offered in evidence by the defendant admissible as a defence in this action?   This depends upon the single inquiry, whether the *legal tendency* of these facts is to disprove, in any degree, the *malice* implied by the slanderous words laid in the declaration.   Without *such* tendency, they could not, *in legal contemplation, mitigate the damages.*

[Steever v. Beehler.]

It was said in the argument, that the persuasion of the plaintiff to induce the defendant to lend his promissory note to Mr M'Caraher, taken in connexion with the subsequent loss of the debt thus eventually resulting by the insolvency of Mr M'Caraher and the preferences in his assignment, constituted the *provocation* of the slander, and should, therefore, have been heard by the jury. But the transaction in regard to the note, occurred nearly *six months* previously; and even the conversation with Mr Richards, which was offered in evidence without any intimation of its purpose, appears, by the very terms of the offer, not to have taken place within less than forty-eight hours from that time; and the assignment of Mr M'Caraher, the most recent event in the series, was consummated at least a day or two before the slander was uttered. Anger retained for the shortest period of time here indicated, in point *of fact* and *in law* could receive no appropriate appellation but *malice.* In Lee *v.* Woolsey, 19 *Johns. Rep.* 319, which was an action of trespass and assault and battery, the defendant, *in mitigation of damages,* offered to prove, among other things, that *the day before* the assault and battery took place, the plaintiff had made several scandalous insinuations against him as a post captain in the navy, charging him with embezzling the public property entrusted to his care, and that he, the defendant, had been informed of these charges on the *evening preceding* the assault. This evidence was overruled, and a motion for a new trial on this account was denied. Chief Justice Spencer, as the unanimous opinion of the court, said: "the only view in which the evidence could be admissible, would be for the purpose of showing that the defendant, under the influence of excited and irritated passions, was impelled by a sense of the injury done to him by the plaintiff, thus to redress himself. The law, in tenderness to human frailties, distinguishes between an act done deliberately, and an act proceeding from sudden heat."

And after stating the mitigating effect, in homicide, of a strong and sudden provocation, he adds: "in analogy to this principle, evidence, in civil actions for assaults and batteries, *in mitigation of damages,* has been admitted to show a provocation on the part of the party complaining of the injury. *But the provocation must be so recent* as to induce a fair presumption that the violence done was committed during the continuance of the feelings and passions excited by it. On any other principle, the law would countenance the most *revengeful* feelings; and indirectly also an appeal, by persons con-

[*Steever v. Beehler.*]

ceiving themselves injured, to force and violence." And he sums up the argument with this conclusion : " it appears to me neither to comport with sound policy nor law, to allow an inquiry into antecedent facts, in such a case as this, unless they are fairly to be considered as *part of one and the same transaction.*"

This doctrine has been directly applied, by the same court, to the action of slander, in Beardsley *v.* Maynard, 4 *Wendell* 337, where the publication of a libel, by the plaintiff, against the defendant, *three* days previous to the publication of the defendant's libel against the plaintiff, was rejected in evidence, in palliation of the offence on the ground of *provocation.*

We fully concur in the *principle* of these decisions, and consider its bearing upon the present case as too plain to need special application.

2. The objection to the charge of the court, to give it the greatest weight which under any circumstances could be claimed for it, is quite inadequate to disturb the verdict. The expression excepted to, taking in its connexion with the other parts of the charge, was not improper. The judge stated, explicitly, the distinction between words of passion uttered in haste and repented of as soon as uttered, and words of cool, deliberate malice. This is all that could be required.

3. *Excessiveness of damages,* in actions like the present, in which no fixed standard exists, is frequently an embarrassing subject to courts. Of the *power,* nay of the *duty* to interfere, where the verdict can be referred to no rational principle, but is manifestly the result of passion, prejudice, partiality or corruption, no doubt is entertained. And a plain misapprehension of the jury of the facts of the case, or of a principle of law by which their verdict has been improperly influenced, would certainly call for correction. In the present case, although the damages are large ; considering the nature of the slanderous imputation—its repetition before a large and promiscuous crowd in a situation of great publicity—the indecent, tumultuary and menacing conduct of the defendant on the occasion, I should have been content to let the verdict stand. But my brothers are strongly impressed with the necessity of a different course ; and on a question of this description, I cannot doubt that my individual opinion should be surrendered, and I therefore concur with them in awarding a new trial.

Rule absolute.