Sc ates, Justice, delivered the opinion of the court: (1) Case for slander. The first eighteen counts charge the speaking of the following words, by the plaintiff in error, to wit: “ I have lost some wheat, and I know that Bennett stole it.” “I have lost twenty-five or thirty bushels of wheat, and I know that Bennett stole that much from me; for I know that he will steal, and all the neighbors know it.” The two last counts charge the speaking of the following words, to wit: “I know that the Bennetts will steal, for they stole my corn, when I was gone off with Martin; for they had nothing to give their oxen but wheat bran; and I know that the way they worked their oxen, they could not have kept them looking so fat, if they fed them on nothing but wheat bran.” The first count contained the usual inducement of good character; and all the other counts proper averments of innuendoes. The general issue was pleaded to the whole declaration, and to the first eighteen counts a special plea of justification that the plaintiff below did steal one bushel of wheat; upon which issue was taken. The jury found for the plaintiff. The defendant moved for a new trial, because of the admission of improper testimony on behalf of the plaintiff; and the exclusion of proper testimony on behalf of the defendant; and because of improper instructions by the court. The motion was denied, and a bill of exceptions allowed and sealed, containing a part of the evidence. As the bill of exceptions does not purport to contain all the evi-deuce, I will only notice those portions of it upon which errors are assigned for admitting improper and excluding proper testimony. The bill of exceptions states, that the plaintiff introduced several witnesses, whose testimony tended to prove the speaking of the words charged in the several counts of the declaration; among others, one Jacob Bruner, who testifies to numerous conversations with the defendant; in one or another of which, he spoke, in substance, the words laid in the several counts. Upon cross examination, the witness was asked by the defendant below, whether he, the witness, had ever said to the defendant, in any of those conversations, that Bennett stole the wheat; and that if the defendant did settle with Bennett, that he should-always believe that Bennett stole it; whether he did not say to the defendant that he knew that Bennett stole it; [* 45] whether he did not say to the defendant, that when Bennett went after the harrow on Saturday, that he stole Young’s wheat; whether he had ever said to F. W. Watkins, that he knew that Bennett stole Young’s wheat; whether he had not said the same to Andrew Brown; whether he said the same to Spencer Myers, when he went to serve the search warrant; whether it was not a principle of action with him to go into a court of justice, and swear false against a man with whom he had a difficulty, to get revenge; and whether he had ever said this to Nancy Brown. To all these questions, and the evidence sought by them to be elicited, the plaintiff objected, and his objection was sustained. After calling other witnesses, whose testimony was given to prove the words, the plaintiff rested. The defendant then called one Watkins, his brother-in-law, who testified that he was acquainted with Bruner’s general character for truth and veracity in the neighborhood, and gave testimony tending to prove that it was bad. No further enquiry was made of the witness. On cross-examination, the plaintiff offered to prove by Watkins, the speaking of the words charged in the declaration by the defendant, on other and different occasions than those testified to by the other witnesses. To this the defendant objected, and the objection was overruled. The witness testified to the speaking of words charging the plaintiff with stealing the defendant’s wheat. He further testified that he had never heard Bruner’s truth and veracity, under oath, questioned; and that he had never heard but two persons speak of it; one was defendant’s father-in-law, and the other he did not recollect. The plaintiff examined four other witnesses as to the speaking of the words. The court also permitted the defendant to ask Bruner as to what he' had said in relation to the testimony he should give in this suit; and also permitted the defendant to give evidence, by other witnesses, as to what he had said, with a view to contradict him. The defendant offered to prove, by Watkins, that there was a report current in the neighborhood of the plaintiff, at the time the defendant charged him with stealing corn, that the plaintiff had stole the defendant’s corn. He also offered to prove that previous to', and at the time of uttering the words charged, that the plaintiff’s character was bad. To all this the plaintiff objected; and it was excluded by the court. To all these decisions, and to the denial of the motion for a new trial, the defendant excepted, and now assigns seven errors: First. In excluding evidence of the plaintiff’s general character ; Second. In excluding evidence of a story in the plaintiff’s neighborhood, that he stole the defendant’s corn; [*46] Third. In excluding the questions put by the defendant to Jacob Bruner, and the evidence sought to be elicited; Fourth. In permitting the plaintiff to examine Watkins in chief, after having rested his case; Fifth. In permitting the plaintiff to examine other witnesses in chief, after he had rested his case, and after the defendant had introduced testimony; Sixth. In excluding proper testimony on behalf of the defendant, and admitting improper testimony on behalf of the plaintiff; and, Seventh. In refusing a new trial. As the record does not contain all the evidence, it seems the hew trial was not asked on account of the insufficiency of the evidence; and the propriety of granting it must depend upon the solution of all, or some one, of the other errors assigned. In the second assignment of error, the plaintiff in error contends that a particular report in the neighborhood that the defendant in error was guilty of stealing the plaintiff in error’s corn, is admissible evidence in mitigation of damages, under the general issue ; there being no plea of justification to the two last counts. It is the opinion of the majority of the court that it is not admissible. It has been so held in several of the states. 1 Pick. 1; 3 Pick. 376; 3 Mass. 546; 6 Mass. 514; 1 Root 346; 4 Conn. 408. In Virginia, circumstances not amounting to a full justification are not admissible, in mitigation, under the general issue. 6 Munf. 465; and in 5 Munf. 16, the point was discussed but not decided, One reason for excluding this evidence is, the great injustice in permitting a defendant to create such a report to the prejudice of the plaintiff, and then avail himself of it in mitigation of damages. And. so far as defendants might avail themselves of their own wrongful act, this reasoning is unanswerable. But in cases where the defendant is not the author of the report, the evidence would be on a similar footing with general repute, so far as tile defendant is concerned. 1 am of opinion that such evidence is admissible; and Justice Treat concurs with me. We found that opinion upon the following authorities: 2 Stark. Ev. 469. and note 1: Earl of Leicester v. Walton, 2 Campb. 251; Cor. Mansfield, Ch. J.-v. Moor, 1 M. and S. 284 ; King v. Perrot, cited in 3 Eng. Com. L. 115; Williams v. Callendar, Holt C. 307, cited in 3 Eng. Com. L. 115; Mills et ux. v. Spencer et ux., Holt C. 533, cited in 3 Eng. Com. L. 177; Newsam v. Carr, 2 Stark. 69; 3 Eng. Com. L. 249; 1 Penn. 169; Cook v. Barkley, one judge dissenting; Calloway v. Middleton et ux., 2 Marsh. 372: 1 Birney 92; Buford v. McLuny, 1 Nott and McCord 268; Bailey v. Hyde, 3 Conn. 463. The third error assigned questions the refusal of the court to permit certain questions to be asked the witness [* 47] Bruner. The doctrine contended for on this point does not apply to such a case. The general rule is, that where confessions or admissions are introduced by one party, the opposite party is entitled to the whole conversation. The witness, in testifying to the defendant’s conversations, inadvertently or incidentally introduced some of his own remarks. The plaintiff now insists that he is entitled to all the remarks and conversation of the witness. Such is not the rule or the right of the party. Where the defendant’s answer to a question put by the witness, or another person, is sought to be introduced, and such answer could not be understood, or would be unintelligible,. without stating the question also, to which it was made, in such ease the question would be admissible, and in like cases. The questions put to the witness do not fall under this rule. The fourth and fifth errors are alike, involving the same principle. Whether the plaintiff, after having rested his case, and after the introduction of testimony by the defendant, can cross-examine defendant’s witnesses in chief, or call other witnesses in chief, rests in the sound discretion of the court. The first and sixth errors involve the same principle, the exclusion of evidence of the plaintiff’s general character. It is the opinion of the court, that the evidence was admissible. It was objected to, because there was a special plea of justification. Mr. Starkie lays down the rule, that, “general evidence of bad character seems to be admissible, although the defendant has justified that the imputation is true; for if the justification should fail, the question as to the quantum of damages would still remain.” 2 Stark. Ev. 470. The decisions that evidence'of general bad character is admissible, under the general issue, in mitigation of damages, are almost uniform. 2 Stark. Ev. 216, 470, and numerous authorities there cited, both English and American. Contra. Foot v. Tracy, 1 Johns. 45, but since overruled; 2 Cowan 811. This is the rule in Connecticut, North and South Carolina, Massachusetts and Kentucky. In Vermont it seems to be otherwise. Smith v. Shumway, 2 Tyler 74. The only diversity of opinion seems to be as to its admissibility in cases in which a plea of justification has been put in with the general issue. In Snowden v. Smith (Devon Sum. Ass. 1811), Chambre, Justice, rejected such evidence, because the special plea was in. Cited in 2 Stark. Ev. 216-9. In a subsequent case of Tirkham v. Oxley, cited in Phil, on Ev. 189, Heath, Justice, allowed such evidence, where a plea of justication had been pleaded. [* 48] This decision meets the approbation of Mr. Starkie, and I think is founded in better reason and justice. If the issue on tire justification, and the quantum of damages were to be tried separately, such evidence would clearly be admissible in ascertaining the damages, after the plea of the justification had failed. Laying them together ought not to deprive the defendant of it. The court could instruct the jury how to apply it. In the case of Mawby v. Barber (Lincoln Sum. Ass. 1826), Lord Tenterden, Ch. J., admitted such evidence as the safer course, although a plea of justification was in. And it would extend to the several actions involving character; as slander, libel, malicious prosecution, adultery, seduction, or breach of marriage promise. 2 Cowen 813. Many of the American decisions, however, are against its admission. It is the opinion of the court that the judgment be reversed at the cost of the defendant in error, and the cause be remanded with direction to award a venire de novo. Judgment reversed. ANONYMOUS. The court decided that the cost of the transcript of the record •from the court below should be taxed in the fee bill from this • court. Wilson, Chief Justice, and Semple, Justice, were not present at the argument of this cause, and gave no opinion.