HASKINS *vs.* LUMSDEN et al.

APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard November 2, 1859.]                    [Decided January 4, 1860.

### *Libel—Evidence.*

Evidence of the existence, at and before the time of the publication of a libel, of common rumors and reports, to the effect that the plaintiff was guilty of that with which he was charged in the libel, which rumors and reports were before the publication communicated to the publisher, are inadmissible in mitigation of damages in an action of libel, where the libel does not state or refer to such rumors or reports, or refer to them as authority for the publication.

Reports and rumors, if received in evidence in an action of libel, must be received either in diminution of damages, by showing the plaintiff's previous character to have been bad, or to repel the presumption of malice on the part of the defendant.

This was an action for libel, brought before the code took effect, by Joseph W. Haskins, against Samuel Lumsden, Wil-

liam G. Halpin, and Edward Kennibeck, for publishing a handbill, headed "*Jackson Hadley,*" and addressed to "Democrats of the first district of Wisconsin, and Irishmen and Germans in particular," which was published by the defendants the evening preceding the general election of 1856, at which election Hadley was a candidate in that district for member of Congress. The plaintiff counted upon that portion of the handbill which read as follows: "Are the people aware of his combinations with J. W. Haskins, (when Hadley and he kept the chequered ware-house, on the river,) and Hadley's brother-in law, Hopkins, for the sale of unclaimed goods, fixed so as to have them unclaimed, and instantly removed, when got out of a propeller, sloop, or steamer, to a place of security, for fear they would be claimed; and ten thousand dollars worth of such unclaimed goods, and the money divided and pocketed, at the store, No. 57 East Water street, Milwaukee, and the store rented for that purpose; and when all was sold out, in Hopkins' name, 'to be let,' on the store, ever since." "Judgment debts to many thousand of dollars hang over the head of J. W. Haskins, another professed democrat, and a tool and partner in infamy with Hadley."

To this declaration the defendants pleaded, first, the general issue, and second, the truth of the statements; and the plaintiff replied, denying the truth. On the trial, the plaintiff proved the publication of the handbill by the defendants, and rested. The defendants then called a witness, and asked him the following questions: "Were there any common reports, in the year 1856, in relation to the plaintiff, in connection with Hadley and Hopkins, as to the honesty and integrity of the plaintiff in conducting the ware-house business, commission and storage, in the city of Milwaukee?" "Were there, in the fall of 1856, in the city of Milwaukee, any public and common rumors in regard to the want of integrity of J. W. Haskins, the plaintiff, in his connection with Jackson Hadley and O. B. Hopkins, in conducting the chequered ware-house, on the Milwaukee River, in which they were engaged as a place to receive and dispose of unclaimed goods, and in such a manner as to have the owners and consignees of goods designed for said ware-house, suppose the same were not received, so as to have them unclaimed, and then bring them off to No. 57 East Water street, or some other place which they kept for that purpose, to be kept and disposed of as unclaimed, and in that manner to cheat and defraud such own-

ers and consignees, and to divide and pocket the money aris-
ing therefrom ?" "And did you communicate such rumors to
the defendants, or either of them, before the time of the pub-
lication ?" Both of which were rejected by the court, and
the jury, under the instructions of the court, found for the
plaintiff $1,000, on which judgment was rendered, and the
defendants appealed to this court.

*J. Downer and J. E. Arnold,* for the appellants, cited the
following authorities: Sedgwick on Meas. Dam., 453 to 469 ;
Starkie on Slander, Vol. 1, p. 219 to 226; *Underwood vs.
Parks,* Strange, 1200 ; *Leicester vs. Walter,* 2 Camp., 251 ;
————— *vs. Moor,* 1 Maule and Sel., 284 ; Starkie on Slander,
(2d ed.,) with notes by Wendell, Vol. 2, p. 90 to 96, and notes;
*Kennedy vs. Gregory,* 1 Binney, 85 ; ib., 90, 92, n.; *Callo-
way vs. Middleton,* 2 A. K. Marshall, 372 ; *Hyde vs. Baily,* 3
Conn., 466 ; *Williams vs. Miner,* 18 Conn., 474 ; *Buford vs.
McCord,* 1 Nott and McCord, 268 ; *Rigdon vs. Wolcott,* 6
Gill and Johns., 413 ; see also 1 Blackf., 369 ; 3 Ham., 270 ;
*Dewitt vs. Greenfield,* 5 Ohio, 225 ; *Reynolds vs. Tucker,* 6
Ohio State, 516 ; *Gilman vs. Lowell,* 8 Wend., 578 ; *Bushnell
vs Prosper,* 1 Kern. 357.

*Palmer & Stark,* for the respondent.


*By the Court,* DIXON, C. J. Although the appellant's coun-
sel makes several points in their brief, yet as only one was
insisted upon in argument, and as the others seem clearly
untenable, we shall dispose of the case with reference alone
to the point argued. The question may be stated thus: Is
evidence of the existence at and before the time of the publi-
cation of a libel, of public and common rumors and reports
to the effect, that the plaintiff was guilty of that with which
he was charged in the libel, which rumors and reports were
before the publication communicated to the publishers, ad-
missible in mitigation of damages in an action against them,
where they assume to assert the charge themselves, without
stating the existence of such rumors or reports, or referring to
them as authority ? Though amid the various and conflict-
ing decisions to be found in the English and American re-

Haskins vs. Lumsden et al.

ports as to whether rumors and reports unfavorable to the plaintiff, in actions of libel and slander, are admissible at all, and if so, under what circumstances, and for what purpose they are admissible, it is a laborious and difficult task to say upon authority what the law is upon the subject; yet after an examination of them, we say in the case before us, that both upon principle and authority, such *evidence is inadmissible.* The marked and just distinction which has at all times been made by the common law between slander and libel, between slanderous words *spoken,* and the same words written *or* printed, we think fully justifies us in holding, that in an action against the publisher, pre-existing reports and rumors of the same character of the slanderous charges made in the libel, ought not to be shown to repel the presumption of malice, where no reference is made to them in the publication, and where by the mode of statement the publisher asserts their truth, as of his own knowledge. The writing of a slander has always been regarded as a much higher offence than barely speaking it. In respect to our natural frailty and weakness, no action is given for defamatory words spoken, unless they be of the harsher kind, which impute crimes, or are directly detrimental to one's trade, profession, or calling. Words of milder character are considered as mere passing detraction, without substance sufficient to injure or affect the reputation. The reason of the rule, however, ceases when the words are written or printed. They cannot then be deemed the result of sudden passion, or a *disposition* to trifle, but must be regarded as evidence of a deep and lasting hatred, and a desire permanently to malign and injure. The writing or printing is a deliberate act, and the publication becomes a permanent injury and mischief. What was before mere abuse or reproach, becomes a well advised and permanent accusation. For words written persons are punishable by indictment, as well as by civil action, which is not the

case with mere oral slanders. In view of this distinction, we think it would be unreasonable and improper to admit evidence of the existence of the lesser offence, in extenuation of the damages sustained by the commission of the higher, in a case like the present. It may well be doubted whether a defendant ought, under any circumstances, to have a per centage carried to his credit on account of the injuries which the plaintiff's character had previously sustained from slanderous rumors and reports, as a reward to him for the labor of having transformed them from the soft and perishing medium of words spoken, to the solid and durable currency of words written or printed. We do not, however, wish to be understood as expressing any opinion outside of the facts of the present case, or as saying that such rumors might not be proved, to rebut the presumption of malice in a case where the charge is made because of them, and referring to them as authority, or where it is simply asserted that such rumors and reports prevail, without at the same time asserting a belief in their truth. Such cases would present a very different question from the present, and it will be time enough to decide them when they actually arise.

Here, however, the defendants make the charge their own, and give it a new and permanent form of existence, which it had not before. The offence of which they are guilty, is one which did not before exist. The offer by the defendants to prove the existence of the rumors *in mitigation of the damages*, is an admission on their part of the falsity of the accusations; and is not the guilt of him who deliberately prints and publishes of another slanderous words previously spoken, though not by himself, equal in degree with that of him who invented and first spoke them? Our perceptions of the different degrees of moral turpitude or wrong are not sufficiently nice to enable us to discover the difference. If there be any, we should say that the balance, in a moral point of view, is

in favor of the speaker, instead of the printer.   The malice to
be implied from the act of printing and circulating in that
form, is certainly equal to that implied from the mere speak-
ing.   None of the authorities cited by the appellant's counsel
go to the extent of admitting this evidence.   In order to a
proper understanding of them, it must be remembered that
there is a broad distinction between proof of *facts and circum-
stances* within the knowledge of the defendant, which go to
disprove malice, by showing that he, through mistake, be-
lieved the charge true when it was made, and proof of ru-
mors or reports of the truth of the charge, or mere informa-
tion derived from credible sources.   Facts and circumstances,
as spoken of in the cases, are not to be understood as in-
cluding reports and rumors.   These belong to another branch
of defense.   Much embarrassment and confusion will also be
saved by its being further borne in mind, that there is a dis-
tinction between the objects for which reports and rumors
may be received.   They are admitted for one of two pur-
poses only, either to diminish the damages, by showing the
plaintiff's previous character to have been bad, or to repel the
presumption of malice, on the part of the defendant.

   *Williams vs. Miner*, 18 Conn., is a case where the offer was
to prove facts and circumstances within the knowledge of the
defendant at the time of speaking the words, which tended
to prove the guilt of the plaintiff, and which the court say
"might and probably did excite reasonable suspicions of
guilt" in the defendant's mind, and is a fair illustration of
the rule.   The alleged slanderous words were, "he is a thief,
and stole the hay and hayseed from Mrs. Dow's barn."   The
facts offered to be proved were, that the plaintiff took and
converted to his own use the hay and hayseed of Mrs. Dow,
without her knowledge and consent, though under such cir-
cumstances as not to amount to a larceny.   The court say,
that the circumstances of the taking were such as, by persons

not legally informed, are often supposed to constitute the crime of theft, and add: "The question is, as it seems to us, if the defendant used the language imputed to her from a *knowledge*, that the plaintiff had taken the property of Mrs. Dow, in the manner stated, without her knowledge, and against her consent, and converted it to her own use, whether she should be subjected to the same extent of damages, as if her charge had been an entire fabrication and made without reasonable ground to believe it to be true? Why, upon general principles, was not this evidence admissible?" They decided as we think very properly, that the evidence was admissible. It is manifest, however, that the principles of that case have no bearing upon the one under consideration.

The case of *Bailey vs. Hyde*, 3 Conn., 463, is one where facts and circumstances were sought to be shown, by the admission of the plaintiff; and although such proof was held in general to be proper to rebut the presumption of malice, yet as the facts contained in the admission were *unknown* to the defendant at the time of the speaking, and therefore could not diminish the presumption of the malice, the testimony was held to be improper. *Rigden vs. Wolcott*, 6 Gill & John., 413; *Willson vs. Apple*, 3 Ham., 270; *Reynolds vs. Tucker*, 6 Ohio St. R., 516, are all cases where evidence of such facts and circumstances as show a reasonable ground of suspicion of the truth of the matters charged is held admissible. *Reynolds vs. Tucker*, was an action of slander for words spoken against the chastity of the plaintiff's wife, and it was held competent under the general issue, in mitigation of damages, to prove that the wife and an unmarried man had lived together alone in one house, where the knowledge of such mode of living had come to the defendant before the speaking of the words. The other authorities cited are manifestly cases where the proof was allowed for the purpose of showing that the reputation of the plaintiff was generally bad before the slan-

der or libel, and that therefore he had suffered little or no loss of character or society by reason thereof; and not cases where rumors or reports of the same character, as those complained of, were as such admitted for the purpose of disproving malice in fact, on the part of the defendant.

In the case of *Leicester vs. Walter*, 2 Camp., 251, the proposition of the defendant's counsel was to prove " that before and at the time of the publication of the libel, there was a general suspicion of the plaintiffs's character and habits, and that his relations and former acquaintance had on this ground ceased to visit him," &c., and not to prove alone that rumors of the particular charge contained in the libel had generally prevailed at and before its publication. Sir James Mansfield, C. J., in deciding the point, says : " The plaintiff's declaration says, that he had always presented a good character in society, from which he had been driven by the insinuations in the libel. Now the question for the jury is, whether the plaintiff actually suffered the *gravamen* or not. Evidence to prove that his character was in as bad a situation before as after the libel, must therefore be admitted."

In ―――― *vs. Moor*, 1 Maule & Sel., 284, the defendant on cross-examination of the plaintiff's witness, who proved the words, was permitted to ask whether he had not heard reports in the neighborhood, that the plaintiff had been guilty of *similar* practices, (it being an action of slander imposing a specific charge of unnatural practices to the plaintiff.) The reason of allowing the evidence is given by Lord Ellenborrough, in the opinion. He says: " Certainly a person of disparaged fame is not entitled to the same measure of damages with one whose character is unblemished; and it is competent to show that, by evidence." The same is true of the case of *Galloway vs. Middleton, et ux*, 2 A. K. Marsh., 743. The action was brought by Middleton and wife against Galloway for uttering and publishing slanderous words, importing

a charge, that Mrs. Middleton had, before her marriage, had a mulatto child, the wife of one Harry Butcher. The offer of the defendant was to prove that Mrs. Middleton "was generally reputed, by all the neighbors, fifteen or twenty years before, to be the mother of Harry Butcher's wife." In *Buford vs. McLuny*, 1 Nott & McCord, 268, the only question before the court was whether evidence of the plaintiff's general bad character is admissible in mitigation of damages, and the majority of the court held that it was. In *DeWitt vs. Greenfield*, 5 Ohio, 225, the decision was that evidence of the plaintiff's general bad character may be given under the general issue, in mitigation of damages, "but not of his character in any single particular." In *Henson vs. Veatch*, 1 Blackf., 369, the defendant first offered to prove in mitigation of damages that the words spoken were true, but the court following the case of *Underwood vs. Parks*, 2 Strange, 1200, and the subsequent cases in which that case has been followed as authority, held that he could not do so. The defendant then offered to prove that he had strong suspicion that the words were true; but this he was not allowed to do, and the court say, referring to *Leicester vs Walter*, that the utmost defendants had been permitted to prove was a *general* suspicion, that the charge in the libel was true. The case of *Kennedy vs. Gregory*, 1 Binney, 85, stands upon peculiar grounds, which, if they existed in this case, as we have intimated above, might lay the foundation for the introduction of the testimony offered. There the witness called by the plaintiff to prove the speaking testified, that on asking the defendant if the plaintiff was given to drink, that being the slander charged, by reason of which the plaintiff claimed to have been thrown out of employment as a school teacher, and to have suffered special damages, he answered either "it is so," or "they say it is so." The words "they say" are made emphatic in the report, and it is evident that it was because the plaintiff's

witness left it doubtful whether the defendant asserted that the plaintiff was given to drink, or whether he simply stated that it was so rumored, that the court allowed evidence of the existence of such reports to go to the jury in mitigation of damages. These are all the authorities cited and relied upon by the appellant's counsel, and it is clear that none of them go to the extent of showing that the circuit court erred in rejecting the evidence, which the defendants proposed to give on the trial.

It did not appear in this case from the plaintiff's showing that there were any general rumors as to his want of integrity in conducting the warehouse business, which were the basis of the libelous publication, or to which it in any manner referred. The offer was not to prove that the plaintiff's general character at and before the publication was bad, nor that he was generally reputed in the neighborhood to be dishonest or suspected of a want of integrity in conducting his warehouse business, but the question was whether there were *any* common reports in relation to the plaintiff in connection with Hadley and Hopkins, as to his honesty and integrity in conducting the warehouse business, &c. The existence of unfavorable and defamatory rumors and reports is one thing, and a real loss of character and standing in community quite another. Everybody knows that such rumors and reports may be afloat without real injury or detriment to the person against whom they are circulated, and he may not for that reason feel called upon to notice or concern himself about them; but because some slanderer, whom no one believes, sees fit to gratify his malice in the harmless business of inventing and speaking them, are they to be brought into a court of justice as an excuse for him, who deliberately transfers them into a printed handbill or circular? We think not. It seems to us, within the authorities cited that the least that a defendant under such circumstances could be permit-

ted to do in extenuation of damages would be to show that the plaintiff was a person of disparaged fame and tarnished reputation, before the publication of the libel complained of. But according to some well considered cases, he could not even do this. See *Jones vs. Stevens*, 11 Price, 235, in which ———— *vs. Moor*, and *Leicester vs. Walter*, are overruled, and in which general evidence of the plaintiff's bad character and ill repute in his business as a practicing attorney, was held inadmissible either to contradict the allegation in the declaration, that the plaintiff during, &c., exercised and carried on the business of an attorney, with great credit and reputation, with a view to mitigating the damages on the general issue, or in support of averments in the defendant's pleas pleaded by way of justification, that the plaintiff was a disreputable professor and practitioner of the law. See, also, *Downing vs. Butcher*, 2 M. & R., 374, in which *Jones vs. Stevens* was sustained.

It is unnecessary for us to inquire whether or not a defendant in a case where the charge is made as of his own knowledge, should in mitigation of damages be permitted to prove that the matters charged were communicated to him by a credible person professing to know them; or whether or not rumors and reports as to the matters charged, should be received for the same purpose where the offer of them is accompanied by an offer to prove their truth, as neither of these questions are properly raised by the record.

The judgment of the circuit court is affirmed with costs.