EARLEY, Appellant, vs. WINN, Respondent.

*September 11—October 9, 1906.*

*Slander: Evidence: Reputation of plaintiff: Hearsay: Impeachment of witness: Express malice: Cross-examination: Discretion: Parts of conversation: Right to prove whole: Separate slanders: Instructions to jury: Meaning of words spoken: Court and jury: Pleading construed: Separate causes of action: Words actionable per se: "Infamous punishment."*

1. In an action for slander evidence as to plaintiff's general reputation, in mitigation or partial denial of damages, must be confined to reputation in respect to the fault or trait of character involved in the offense charged.

2. Where the alleged slander was to the effect that plaintiff had been "whipping her mother," evidence that prior to the slander plaintiff had a general reputation for quarreling with and illtreating her mother was admissible on the question of damages; but evidence as to such reputation at the time of the trial was wholly inadmissible.

3. Evidence in such a case of specific instances of quarrels between plaintiff and her mother at times other than that of the alleged whipping, did not tend to prove that whipping; nor was such evidence admissible to show plaintiff's reputation in that respect.

4. Evidence of statements made to third persons by the mother as to plaintiff's treatment of her was hearsay and inadmissible.

5. A witness cannot be impeached by proof that he has made statements contradictory to his testimony, unless such statements are material to the controversy.

6. A defendant who uttered a slander upon his own authority and as of his own knowledge cannot, in order to minimize or defeat the inference of express malice, prove the unsworn statements of others or current rumors injurious to the plaintiff.

7. The extent to which cross-examination of witnesses may go is a matter peculiarly within the discretion of the trial court.

8. A witness for defendant who had testified as to what happened at the time the alleged slander was uttered, and to a subsequent conversation with certain persons, was asked on cross-examination whether he did not tell them that he knew nothing of the occurrence. *Held,* that the question was proper either as contradicting the witness or as a basis for impeaching testimony.

9. When one party gives in evidence a portion of a conversation material to the controversy, the other party may give the whole thereof, at least so far as it has any relation to the portion already offered.

10. In an action wherein the complaint charged at least two slanders, the court instructed the jury that if they found that defendant did not speak substantially the words alleged in the complaint he was entitled to a verdict. Plaintiff's counsel did not request any such modification or amplification of the instruction as would inform the jury that they might find a verdict for plaintiff if they found that either of the alleged slanders had been uttered. Whether, in the absence of such request, the instruction given was so clearly erroneous as to necessitate a reversal, is not determined.

11. Defendant was alleged to have said to plaintiff in the presence of others: "Shame, shame, B. W., whipping your mother! She abuses her mother, and this isn't the first time either." *Held*, that these words, besides asserting that plaintiff had just been whipping her mother, were capable of being understood as asserting that there had been other like abuse on previous occasions, and that the question whether they had that meaning to the hearers should have been left to the jury.

12. A complaint alleged the speaking of certain defamatory words in the presence of certain persons and, a few minutes later, at another place, the speaking of other defamatory words, and that "said false and defamatory words were maliciously spoken" in the presence of certain persons named "and divers other persons and at divers other times and places." *Held*, that the words last quoted did not constitute a charge of distinct slanders at other times and places and to other persons, and that, to warrant the admission of evidence of such other statements as separate and independent slanders and not merely as bearing upon the question of malice, they should have been pleaded as separate causes of action.

13. Spoken words falsely charging an indictable crime involving moral turpitude or which would subject the person charged to an infamous punishment are actionable *per se*.

14. Imprisonment in the county jail is "an infamous punishment," within the meaning of the above rule, and, an assault and battery being so punishable, spoken words falsely charging that crime are actionable *per se*.

APPEAL from a judgment of the circuit court for Columbia county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Action of slander, for that the defendant spoke of and concerning the plaintiff, on October 25th, in the presence of one James Lake and divers other persons, the following: "We want you to come with us to Woods'. Something is wrong. *Bertha* [meaning this plaintiff] is whipping her mother." Whereupon the person addressed, the city marshal, with the defendant, repaired to the plaintiff's residence, where defendant said, "Shame, shame, *Bertha Wood* [meaning this plaintiff], whipping your mother! She abuses her mother, and this isn't the first time either. Why don't she come down and vindicate herself?" The complaint also alleged that the said false and defamatory words were maliciously spoken in the presence of several persons named and divers other persons at divers other times and places. The answer denies the utterance of the libel, and justifies that at the time referred to plaintiff was in fact engaged in the act of whipping her mother, and that any statements of his were made only to persons then present who had knowledge of the fact. The answer further alleges that plaintiff's mother had prior thereto stated to the defendant that she was in danger of injury at the hands of her daughter, the plaintiff, and had requested him to come to her aid in case he should hear any disturbance at the house. A general verdict for the defendant was rendered upon trial, from judgment on which plaintiff brings this appeal.

*Daniel H. Grady,* for the appellant, argued, among other things, that charging a person with a crime punishable by imprisonment in the county jail is actionable *per se. Miles v. Oldfield,* 4 Yeates (Pa.) 423, 2 Am. Dec. 412; *Miller v. Parish,* 8 Pick. 384; *Woodbury v. Thompson,* 3 N. H. 194; *Frisbie v. Fowler,* 2 Conn. 707; *Andres v. Koppenheafer,* 3 S. & R. 255, 8 Am. Dec. 647; *Harker v. Orr,* 10 Watts, 245; *Smith v. Silence,* 4 Iowa, 321, 66 Am. Dec. 137; 18 Am. & Eng. Ency. of Law (2d ed.) 892; *Routley v. Harris,* 18 Ont. 405; *Wilcox v. Edwards,* 5 Blackf. 183; *Murray v.*

*McAllister,* 38 Vt. 167; *Young v. Miller,* 3 Hill, 21; *Gudger v. Penland,* 108 N. C. 593, 23 Am. St. R. 73; *Fóuntain v. West,* 23 Iowa, 9, 92 Am. Dec. 406; *Burton v. Burton,* 3 G. Greene, 316; *Lemons v. Wells,* 78 Ky. 117. Counsel cite no case where any court ever held that to charge a woman with the offense of assaulting and whipping her own mother was not actionable *per se.* Words spoken of a woman may be actionable, although the same words spoken of a man might not be. *Malone v. Stewart,* 15 Ohio, 319, 45 Am. Dec. 577; *Alfele v. Wright,* 17 Ohio St. 238, 93 Am. Dec. 615; *Davis v. Brown,* 27 Ohio St. 326, 329, 331; 18 Am. & Eng. Ency. of Law (2d ed.) 881; *Hess v. Sparks,* 44 Kan. 465; *Mitchell v. Sharon,* 51 Fed. 424; *Miller v. Parish,* 8 Pick. 384; *Brown v. Nickerson,* 5 Gray, 1.

For the respondent there was a brief signed by *Olin & Butler,* of counsel, and oral argument by *A. F. Kellogg* and *J. M. Olin.* They contended, *inter alia,* that the charging of the offense of assault and battery is not actionable *per se.* The imputation of an indictable or punishable offense is not actionable unless the offense involves moral turpitude; the imputation of an offense involving moral turpitude is not actionable unless the offense is indictable; and the imputation of an offense involving moral turpitude which is indictable by statute, though only a misdemeanor, is actionable. *Turner v. Ogden,* 2 Salk. 696; *Ogden v. Turner,* 6 Mod. 104; *Onslow v. Horne,* 3 Wils. 177; *Holt v. Scholefield,* 6 T. R. 691; 2 Hare & W. Am. Lead. Cas. (5th ed.) 97; *Skinner v. White,* 1 Dev. & Bat. Law, 471; *Brooker v. Coffin,* 5 Johns. 189; *Van Ness v. Hamilton,* 19 Johns. 349; *Widrig v. Oyer,* 13 Johns. 124; *Young v. Miller,* 3 Hill, 21; *Anonymous,* 60 N. Y. 262; *Case v. Buckley,* 15 Wend. 327; *Bissell v. Cornell,* 24 Wend. 354; *Crawford v. Wilson,* 4 Barb. 504, 510; *Quinn v. O'Gara,* 2 E. D. Smith, 388; *Baxter v. Mohr,* 76 N. Y. Supp. 982; *Andres v. Koppenheafer,* 3 S. & R. 255; *Beck v. Stitzel,* 21 Pa. St. 522; *Gosling v. Morgan,* 32 Pa.

St. 273; *Hillhouse v. Peck,* 2 Stew. & P. 395; *Dudley v. Horn,* 21 Ala. 379; *Berdeaux v. Davis,* 58 Ala. 611; *Billings v. Wing,* 7 Vt. 439; *Redway v. Gray,* 31 Vt. 292; *Underhill v. Welton,* 32 Vt. 40; *Murray v. McAllister,* 38 Vt. 167; *Kimmis v. Styles,* 44 Vt. 351, 354; *McCuen v. Ludlum,* 17 N. J. Law, 12; *Hollingsworth v. Shaw,* 19 Ohio St. 430; *Hayner v. Cowden,* 27 Ohio St. 292, 296; *Mills v. Wimp,* 10 B. Mon. 417; *Smith v. Smith,* 2 Sneed, 473; *Kinney v. Hosea,* 3 Harr. (Del.) 77; *Taylor v. Kneeland,* 1 Doug. 67, 72; *McCarty v. Barrett,* 12 Minn. 494, 495; *Burton v. Burton,* 3 G. Greene, 316; *Harrington v. Miles,* 11 Kan. 480; *Hansbrough v. Stinnett,* 25 Grat. 495, 498; *Hoag v. Hatch,* 23 Conn. 585; *Giddens v. Mirk,* 4 Ga. 364, 368; *Speaker v. McKenzie,* 26 Mo. 255; *Coburn v. Harwood,* Minor (Ala.) 93, 12 Am. Dec. 37, and note; *Pollard v. Lyon,* 91 U. S. 225; *Montgomery v. Deeley,* 3 Wis. 709, 712; *Ranger v. Goodrich,* 17 Wis. 78; *K—— v. H——,* 20 Wis. 239; *Filber v. Dautermann,* 26 Wis. 518, 520; *S. C.* 28 Wis. 134, 136; *Mayer v. Schleichter,* 29 Wis. 646; *Robertson v. Edelstein,* 104 Wis. 440. If it is actionable *per se* to falsely charge orally the offense set forth in the complaint in this action, then it is equally actionable *per se* to falsely charge orally any one of the many petty offenses punishable under our statutes by fine or imprisonment or by both.

DODGE, J. The exceptions reserved and the assignments of error predicated thereon are very numerous, and many of them will be found unnecessary of consideration. An attempt will be made, as far as possible, to summarize those which present questions relevant to the integrity of the judgment, or likely to arise upon another trial.

1. Several assignments of error rest upon admission of evidence of a general reputation of the plaintiff for quarreling with and illtreating her mother before the utterance of the slander, of which the only actionable words charged the of-

fense of "whipping" her. The law is well settled elsewhere and in Wisconsin that in any attempt to prove reputation, other than general reputation, in mitigation, or, to speak more accurately, in partial denial, of damages, the proof must be confined to reputation in respect to the fault or trait of character involved in the offense charged. *B—— v. I——,* 22 Wis. 372; *Wilson v. Noonan,* 27 Wis. 598; *Wilson v. Young,* 31 Wis. 574, 578; *Kimball v. Fernandez,* 41 Wis. 329; 18 Am. & Eng. Ency. of Law* (2d ed.) 1100. Thus, under charge of fornication, reputation for general unchastity, and, under charge of accepting money to influence action as a state senator, bad reputation for official honesty and integrity, were held admissible. The Wisconsin cases declare that the reputation must relate to the very fault or offense charged in the libel or slander, although text-writers use the expression "trait of character involved." It is plain from the testimony of several witnesses that they knew of no reputation for physical abuse, such as whipping, but had heard that the mother complained that plaintiff was no daughter to her; that she (the mother) was nothing in the house. Doubtless the same attribute of character involved in any illtreatment is also involved in an assault or whipping; but it may well be argued that other traits, differing not only in degree or intensity but in kind, are to be found in the latter. Illustrations from the authorities, however, seem to bring the objected evidence within the rule. Thus, under charge of perjury, a generally bad reputation for truth and veracity has been sustained (*Moyer v. Moyer,* 49 Pa. St. 210); also, under charge of adultery, general reputation for licentiousness and unchastity, though fornication not criminal (*Bridgman v. Hopkins,* 34 Vt. 532); under charge of larceny, general reputation for want of honesty and integrity (*Warner v. Lockerby,* 31 Minn. 421, 18 N. W. 145, 821); charge of embezzlement by jockey of horses' winnings justified general reputation for want of integrity in accounting

to employers for the earnings of their horses (*Finley v. Widner,* 112 Mich. 230). Illustrations of reputation excluded as not presenting the same traits of character are *Cole v. Perry,* 8 Cow. 214; *Dillard v. Collins,* 25 Grat. 343. We conclude, with some hesitation, that no error was committed in admitting against plaintiff the evidence of a general reputation for quarreling with and illtreating her mother.

2. The evidence of reputation was not confined to a period prior to the date of the alleged slander, but, in large part, was in response to questions which apparently related to the time of trial. Later some of the witnesses were recalled and testified again to the existence of bad reputation prior to the date of the slander, but this left standing the testimony of numerous witnesses that at the time of the trial the plaintiff's reputation was bad for quarreling with and illtreating her mother. Of course such testimony was wholly inadmissible, and probably highly prejudicial as vilification and abuse of the plaintiff, and perhaps, also, inclining the jurors' minds to belief in the truth of the alleged slander. There is some question whether the objections were such as to call the attention of the court to the vice now criticised by the appellant. We shall content ourselves with the above expression of views as to the propriety of such evidence, and presume the question will not present itself again. In the same connection an instruction was requested and refused that only the reputation prior to the slander could be considered upon the question of damages. This, or some equivalent for it, should certainly have been given, but no reversal can be predicated upon this refusal, since the jury found no cause of action to exist; hence no failure to instruct them as to the measure of damages could be prejudicial.

3. Error is assigned upon admission of proof of specific instances of verbal quarrels between the plaintiff and her mother: on one occasion, about six hours before the time of the alleged whipping set up in the answer; on another, by

the testimony of a witness to the entire period from the preceding noon until the time of such supposed whipping at midnight; and again, the testimony of the mother herself, generally to the effect that there had been a good deal of trouble in the family within the last three years, and that people had overheard quarrels and disturbances frequently, and that plaintiff had been, when in anger, loud and quarrelsome. This evidence had no bearing whatever on the question whether plaintiff did in fact whip her mother at the specific time alleged, except, possibly, some of the testimony of Woolston, confined to the time of the alleged assault. The fact that high words and jangling were heard twelve hours before or six hours before certainly could not have tendency to prove the fact of physical assault at the time in question. The only other issue presented by the defense was that of the plaintiff's reputation, and no rule is better settled than that specific instances, even of the same acts as those charged in the slander, cannot be proved to establish that issue. *Muetze v. Tuteur,* 77 Wis. 236, 46 N. W. 123; *Mahoney v. Belford,* 132 Mass. 393. We can conceive no justification for the admission of this evidence, and its prejudicial effect, in tending generally to vilify and discredit plaintiff before the jury, is so entirely obvious that we cannot doubt that in its admission prejudicial error was committed for which the judgment must be reversed.

4. Error is assigned upon the admission of hearsay evidence, specially the testimony of others as to statements made to them by Mrs. Wood, the plaintiff's mother. Illustrations are: The testimony of the defendant that she said to him, "My life is not safe down there, the way I am treated." And again, that after the slander she said to him, on one occasion, that she was not allowed to eat at the table with them; that she was treated like a dog, and that *Bertha* had taken up the very treatment of her that her father had been using for years. Also testimony of Mr. and Mrs. Lake that after the

slander Mrs. Wood said to them that she could hardly live with *Bertha* (plaintiff) and the rest of them, and that she also referred to the night in question as "that night after I got the pounding." "Got that awful pounding, she said." It is difficult to conceive of any more improper or prejudicial testimony than this. The plaintiff's witnesses, including Mrs. Wood, had all testified that there was no whipping, striking, or assault on the night in question, and the last quotation from Mrs. Wood tended directly to establish defendant's justification that there was, by conveying to the jury the idea that she had stated that there was pounding that night. Being hearsay, it was excluded by the most elementary rules of evidence. *O'Toole v. State,* 105 Wis. 18, 80 N. W. 915; *Koepke v. Milwaukee,* 112 Wis. 475, 88 N. W. 238. Apparently this testimony was offered as impeaching Mrs. Wood, but it suffices to say that the reference to receiving a pounding on the night in question was admitted without laying any foundation by asking Mrs. Wood whether she had made the statement or not. As to the other three statements, some attempt at foundation was made, but one of the elementary qualifications of the right to prove statements made by a witness contradictory to her cross-examination is that such statements must be material to the controversy. *Barton v. Bruley,* 119 Wis. 326, 327, 96 N. W. 815. The issues, as already stated, were whether the plaintiff did whip her mother on the night of October 25th, and whether she had a general reputation in the community for such acts prior to the slander. It is, of course, obvious that none of Mrs. Wood's statements above quoted, except the last, could be in any wise material to either of those issues. This assignment of error must therefore be sustained, and, since the prejudice to the plaintiff is very obvious, is ground of reversal.

5. A question is presented which, though not argued, is perhaps important upon another trial, as to the admissibility of the first of these statements as bearing on the defendant's

express malice. He testified, over objection at all points, that some time before the 25th of October Mrs. Wood, plaintiff's mother, had said to him, "If you hear any noise or rumpus down there, I wish you would investigate; my life isn't safe down there, the way I am treated;" also that he went to the plaintiff's house on account of that request on the evening of the 25th because one James Lake reported some trouble that he (Lake) thought was in progress. The answer sets forth that prior to the alleged whipping Mrs. Wood had given some such information to the defendant, and that the only reason of his going to the house was to aid Mrs. Wood, and that he said nothing to anybody about such whipping, or what he had seen, except pursuant to rendering aid to Mrs. Wood. The answer elsewhere denied, as did the witness on the stand, that he had ever told any one that plaintiff whipped, or that she was whipping, her mother.

While it must be conceded that this is a very inadequate pleading of previous circumstances tending to show absence of express malice in the defendant by inducing him to believe that plaintiff did whip her mother on the night of the 25th of October, or indeed at any other time, we have been led to examine the question whether, if sufficiently pleaded, such a statement would be admissible.

The weight of authority, with some confusion, is in favor of the proposition that the defendant may give in evidence, to show his belief in the truth of the statements made by him, and thus in some degree to refute the inference of express malice, such facts and circumstances as were within his knowledge tending to arouse such belief. In immediate connection with this doctrine are a multitude of rather ill-considered cases upon the question how far he can prove rumors, reports, or statements which have come to his knowledge, and which, of course, would ordinarily be excluded as mere hear-.say. Such reports and rumors have been offered and discussed as affecting two issues usually present in cases of slan-

der and libel: first, as bearing upon the pre-existing general reputation of the plaintiff and thus tending, not to mitigate damages, but to disprove, in some degree, the amount of damages actually suffered; and, secondly, to show reason for a belief by the defendant in the facts which he states and thus acquit him of uttering intentional falsehood, and thus mitigate exemplary damages. Of course, a statement such as this from Mrs. Wood could have no bearing upon plaintiff's general reputation. But if she had stated categorically to defendant that plaintiff had whipped her, could defendant offer it in disproof of his malice in stating, as of his own knowledge, such fact? For such a proposition we have succeeded in finding no direct authority, except the declaration above mentioned, that defendant may prove facts and circumstances, though in some cases, apparently, the distinction between facts of a witness's own knowledge and reports and hearsay is not noticed. Other cases have held that where the slander or libel on its face stated something as said by others, or declared by common rumor, the defendant might prove, not the defamatory fact, but the report of it, since that was the matter which he had asserted, not as defense, but as tending to refute his express malice. *Kennedy v. Gregory,* 1 Bin. 85; *Orth v. Featherly,* 87 Mich. 315, 320, 49 N. W. 640; *Fowler v. Fowler,* 113 Mich. 575, 71 N. W. 1084; *Lewis v. Humphries,* 64 Mo. App. 466; *Eviston v. Cramer,* 54 Wis. 220, 11 N. W. 556. That distinction has been applied most commonly to newspaper publications, made upon the faith of either investigation or information, or of other similar publications. Generally, however, it is said it is no defense that the speaker did not originate the scandal, but heard it from another, even though it was a mere current rumor and he in good faith believed it to be true. Newell, Libel & S. (2d ed.) 350. The inadmissibility of rumors or reports to establish plaintiff's belief in the truth of his statement has been declared in many cases. *Thompson v. Bowers,* 1 Doug. 321;

*Bodwell v. Swan,* 3 Pick. 376, 378; *Wolcott v. Hall,* 6 Mass. 514; *Peterson v. Morgan,* 116 Mass. 350; *Treat v. Browning,* 4 Conn. 408; *Matson v. Buck,* 5 Cow. 499; *Inman v. Foster,* 8 Wend. 602; *Hlasatel v. Hoffman,* 204 Ill. 532, 68 N. E. 400; *Sickra v. Small,* 87 Me. 493, 33 Atl. 9. The subject first received consideration in Wisconsin in *Haskins v. Lumsden,* 10 Wis. 359, where it was held in an action of libel that the defendant could not prove rumors or reports or information derived from credible sources. The court first pointed out the inapplicability of such hearsay under the rule admitting proof of facts and circumstances naturally inducing a belief in the truth. Many authorities were there considered, and it was pointed out that some of them supported only the admissibility of such general rumors and reports as far as relevant to plaintiff's reputation; others authorized proof of acts of the plaintiff himself within the knowledge of the defendant; and a distinction was also drawn between cases where the defendant had asserted the derogatory facts as of his own knowledge, instead of making it expressly and declaredly upon the authority of another's statement. It was said that none of the authorities went to the extent of admitting such evidence as was there offered which was not within either of these three reasons, and it was held inadmissible. Thus it seems that, in a somewhat controverted field of authority, this court at an early day adopted the view, then as now well sustained by the weight of authority, that mere hearsay by the way of rumor, report, or information could not be proved to establish defendant's belief in the truth of a nonprivileged statement made by him as of his own knowledge. Such conclusion has never been departed from, and the case of *Haskins v. Lumsden, supra,* has often been cited as authority, although not very exactly upon this point, and in both *Eviston v. Cramer,* 54 Wis. 220, 11 N. W. 556, and *Delaney v. Kaetel,* 81 Wis. 353, 51 N. W. 559, it is referred to as authority for the distinction between a state-

Earley v. Winn, 129 Wis. 291.

ment by defendant as of his own knowledge and a statement of what has been charged by others or by common rumor.

Nothing is more elementary in the law than that information prejudicial to either party shall be given to the jury only by the sworn testimony of him who knows, and it is matter of common knowledge that, however inadmissible any evidence or a piece of hearsay testimony may be, and however carefully a court may endeavor to instruct the jury against giving it any weight as tending to prove the fact alleged in the hearsay, such evidence unavoidably does have weight; and if the statement made is prejudicial to a party it may often turn the scale against him in the verdict. It is, therefore, the policy of the law to exclude such hearsay, except where it is unavoidably admitted to prove some other fact. Courts may well hesitate between the interest of a defendant to let a jury know that somebody else had told him the fact which he had published against the plaintiff, in order to show his good faith in repeating the charge, and the great detriment to the plaintiff from having such unsworn statements placed before the jury; for if that were to be, it might often subject an entirely innocent plaintiff to having the loosest and most irresponsible calumnies published to the world against him, and the jury prejudiced unfavorably. In *Bodwell v. Swan,* 3 Pick. 376, it is said:

"These very stories may have originated in slander, and character could not be protected if the third or fourth circulator should be able to defend himself or reduce the damages because he only gave more publicity and added the weight of his character to calumny which had been originated by others."

Again, in *Wolcott v. Hall,* 6 Mass. 514, 518, by PARSONS, C. J.:

"The evidence of such reports would therefore be extremely oppressive to the plaintiff, and would encourage slander in the country by leading people to suppose that they were excusable in relating scandal if they were not the authors of it.

. . . And if such reports could be given in evidence the subject of them, however innocent, instead of seeking redress from the laws, had better sink privately under the weight of unmerited calumny, lest by attempting his justification he should give notoriety to slanders which had before been circulated only in whispers."

In *Inman v. Foster,* 8 Wend. 602, 608, Savage, C. J., urges:

"Although such evidence may tend to diminish the malice, yet it does not disprove it, and the effect it is calculated to produce on the plaintiff is to render his character suspicious. Its tendency is, if not to prove the truth, yet to create suspicions of the plaintiff's guilt, when the defendant dare not attempt to prove it, and therefore such testimony is inadmissible."

In *Treat v. Browning,* 4 Conn. 408, 417, Hosmer, C. J., in commenting on the injuries to the plaintiff, said:

"It is by far more just that the defendant, Catharine, who made an unqualified charge on the plaintiff, by a direct affirmation, and on her own personal credit, thus virtually assuming the responsibility of it, should, as was very expressively said by Chief Justice Gibbs, 'be answerable for the full measure of her slander.' "

These reasons, and others like them, appeal to us with great force, and persuade us that we should adhere to the view adopted by this court in *Haskins v. Lumsden, supra,* in holding that one who utters a slander upon his own authority and as of his own knowledge cannot, in order to minimize or defeat the inference of express malice, offer the unsworn statements of others or current rumors injurious to the plaintiff. As a result, we must hold that the statement of Mrs. Wood to the defendant should not have been admitted in evidence.

6. Error is assigned upon denial of privilege of cross-examination of certain of defendant's witnesses. We are impressed by the contrast between the restrictions which were imposed upon the plaintiff in this field and the wide liberality accorded the defendant in cross-examining the plaintiff's wit-

nesses. The subject is, however, peculiarly within the discretion of the trial court, and it is seldom that the appellate court can be convinced that discretion is so abused as to furnish ground of reversal.

Defendant's witness Woolston, who gave testimony to the occasion on the night of October 25th, when it was claimed by the plaintiff that certain of the slanders were uttered, and by the defendant that an assault and whipping took place, was asked the question whether he did not tell certain persons that he knew nothing of the occurrence. Objection was sustained. It appears from the bill of exceptions that, just before, the same witness had been testifying to a conversation with certain persons, and apparently this question referred to the same one. If that were the fair understanding of it, so that the occasion was fully identified to the witness, this question was entirely legitimate, either as contradicting the witness or as basis for impeaching testimony. There may be some doubt, however, as to whether the occasion was so clearly defined, although the objection was not made on that ground. We think, also, that the restrictions placed upon cross-examination of the defendant's witness Robinson, in an attempt to show his partiality and willingness to aid the plaintiff and not the defendant, and in preventing him from identifying a certain newspaper publication, apparently as preliminary to some showing that he was responsible for the information there published, were at least an extreme exercise of the court's discretion in that field; but we are not prepared to say that such discretion was so overstepped that we should find ground of reversal.

7. Defendant having been allowed to give testimony of a witness who overheard part of a conversation between the plaintiff and her mother after the slander, in which the mother exclaimed "You are hounding me to death," which was claimed to refer to some coercion of her into giving testimony, the plaintiff was recalled and asked to state other things

that were said in that conversation as explanatory of the portion above mentioned, which she did, but which, upon objection by defendant, was stricken out. The testimony so stricken out tended directly to explain the mother's exclamation and to show that it was in response to a not improper insistence that the mother ought to go to court and testify as to what took place on the occasion of the alleged whipping. It is a rule of evidence fully established and resting in reason, that, when one party gives in evidence a portion of a conversation material to the controversy, the other party may give the whole thereof, at least so far as it has any relation to the portion already offered. *Smith v. Milwaukee E. R. & L. Co.* 127 Wis. 253, 106 N. W. 829. This exclusion of the plaintiff from explaining the conversation might well have prejudiced her before the jury, and we must hold was error.

8. Error is assigned upon an instruction to the jury:

"If you find that the defendant did not speak substantially the words alleged in the complaint, then the defendant is entitled to a verdict at your hands."

This is complained of because it did not inform the jury that they might find a verdict for the plaintiff if they found any of the words sufficient to constitute a cause of action substantially proved. Doubtless such is the law. *Kloths v. Hess,* 126 Wis. 587, 591, 106 N. W. 251. In the complaint before us at least two slanders are charged. One, the assertion that plaintiff was whipping her mother, made by the defendant to the village marshal, and, a few minutes later, his exclamation in the presence of several people at the house of the plaintiff, "Shame, shame, *Bertha Wood,* whipping your mother! She abuses her mother, and this isn't the first time either." Of course, if the jury found either of these utterances to be proved, they could not find a verdict for the defendant in absence of justification. Hence the instruction is

open to the criticism now urged. However, as that criticism
is based upon mere absence of amplification of the idea con-
veyed, doubtless the plaintiff's counsel should have challenged
the court's attention and requested such amplification or mod-
ification as would convey the correct idea to the jury. We
shall not decide whether, in the absence of such request, this
instruction was so clearly error as to necessitate a reversal
upon that ground.

The court instructed the jury that if they found that the
plaintiff did whip her mother on the occasion mentioned on
October 25, 1902, they should find for the defendant. The
justification in the answer extended only to this single occa-
sion. The words alleged to have been uttered at the plaintiff's
house, and of which some proof was offered, were, "Shame,
shame, *Bertha Wood,* whipping your mother! She abuses her
mother, and this isn't the first time either. Why don't she
come down and vindicate herself?" It is claimed by the
plaintiff that the words "she abuses her mother, and this isn't
the first time either," are capable of being understood by the
hearers as charging that at other times she had been guilty of
such whippings; hence, that mere proof of an act of whipping
on October 25th was not complete justification, and would
not, as matter of law, entitle defendant to a verdict. The rule
is, of course, well settled that the meaning of words alleged
as slander is for the jury. The court can, at most, decide
whether or not they are capable of a slanderous meaning.
*Schild v. Legler,* 82 Wis. 73, 75, 51 N. W. 1099; *Robertson
v. Edelstein,* 104 Wis. 440, 443, 80 N. W. 724; *Dabold v.
Chronicle Pub. Co.* 107 Wis. 357, 362, 83 N. W. 639; *Sco-
field v. Milwaukee Free Press Co.* 126 Wis. 81, 87, 105 N.
W. 227. We are persuaded that the words *"this* isn't the first
time either," being immediately connected with the assertion
that the plaintiff had just been whipping her mother, are at
least capable of being understood as asserting that there had

been other like abuse on previous occasions, and, if so capable, the question should have been left to the jury whether they had that meaning to those who heard them.

9. It is assigned as error that the court in effect ruled that the complaint was not broad enough to admit proof of a similar statement made by defendant on another occasion to one Stephens. It is not very clear whether the court made a ruling on the subject or not; but as the construction of the complaint may be important upon another trial, we should perhaps express ourselves thereon. The complaint, as already stated, alleged certain declarations to the city marshal and others, and a few minutes later, at the plaintiff's house, certain other defamatory words, and then proceeds to allege "that said false and defamatory words were maliciously spoken in the presence of James Lake, E. C. Earley, Alexander Wood, Finn Robinson, and divers other persons and at divers other times and places." It is claimed that this constitutes a charge of distinct slanders at other times and places and to other persons. We think the complaint is open to no such construction. Each occasion constitutes a separate cause of action. Townshend, Slander & L. (4th ed.) §§ 113, 327. If the defendant did at any other time and place make the same charge in the presence of one Stephens, as claimed, it was a separate and independent slander, and the subject of another suit or of a separate count in this complaint. If it was intended to set out such cause of action it should have been as a separate one. Sec. 2647, Stats. 1898; *Luther v. C. J. Luther Co.* 118 Wis. 112, 126, 94 N. W. 69. In absence of such pleading, no inference of such intent should be drawn, for the allegation of such repetitions, not so separately stated, and in connection with the single charge, was proper enough in a complaint attempting to set up one cause of action, for such repetitions were proper of allegation and proof as bearing upon the question of malice. *Born v. Rosenow,* 84 Wis. 620, 54 N. W. 1089; *Hacker v. Heiney,* 111 Wis. 313,

316, 87 N. W. 249. It seems to us clear that, if plaintiff desired to offer proof of such publication as an independent slander, he should have so notified the defendant by setting it up as a separate cause of action.

10. Respondent's counsel devote much of their brief to a learned and interesting discussion of the history of the law of oral defamation and the fundamental reasons which control the definitions of actionable words. Seemingly, the conclusion reached, after much wavering by English courts, is that any words charging a crime punishable by imprisonment in the first instance are actionable *per se*. Newell, Libel & S. (2d ed.) 96. American courts have differed widely, but many have accepted a rule formulated by SPENCER, J., in *Brooker v. Coffin,* 5 Johns. 188, "In case the charge, if true, will subject the party charged to indictment for a crime involving moral turpitude, or subject him to an infamous punishment, then the words will be in themselves actionable." That rule has been adopted in Wisconsin in *Montgomery v. Deeley,* 3 Wis. 709, and different views elsewhere need not be considered. The adoption of this rule is, however, by no means the end of difficulty in ascertaining whether a given charge is slanderous *per se*. It suffices to that end either that the crime charged involves moral turpitude or that the punishment denounced be infamous. What crimes involve moral turpitude has been the subject of vast contention, extending from the view that moral turpitude inheres in every wilful breach of a criminal statute, to the position that only those crimes that present such vileness and depravity as arouses the abhorrence of all mankind are intended. Again, the decalogue, or some other scriptural inhibition, has been thought sufficient by some courts to conclusively ascribe moral turpitude to an act. Several courts have denied that any such characteristic inheres in mere assault and battery, even when the act charged was whipping a mother (*Speaker v. McKenzie,* 26 Mo. 255) ; or "snaking his mother out of doors

by the hair of her head . . . the day before she died" (*Billings v. Wing,* 7 Vt. 439). It is probably true that moral turpitude depends on the conception of the community, which is reflected in the utterances of its judges. Keeping a gambling resort is so characterized in some places. *Buckley v. O'Niel,* 113 Mass. 193. We doubt whether a similar view would have been general in Monaco, or even in some of the United States, a few years ago. Wisconsin finds moral turpitude in selling watered milk. *Geary v. Bennett,* 53 Wis. 444, 10 N. W. 602. We confess to the view that such act is in no considerable degree lower in the moral scale than physical violence to one's mother.

Not only in the respect above mentioned is the aforesaid rule uncertain, but in the use of the expression "infamous punishment." Respondent's counsel contend that this expression had a definite meaning at common law, which necessitated some element in addition to mere imprisonment, such as castigation, branding, the pillory, and the like, and that we must assume such limitation for it in this rule. Such significance seems, *a priori,* improbable when we remember that hardly any, if indeed any, of those elements characterized the punishment for any crime at the time of declaring that rule in Wisconsin. While there is pretty general holding in other states that mere fine is not infamous punishment, and much conflict as to whether mere imprisonment in county jails should be so considered, we do not deem essential review or analysis of those cases, for we consider the latter question settled in this state by *Geary v. Bennett,* 53 Wis. 444, 446, 10 N. W. 602, where, with full deliberation, this court held that fine or imprisonment in the county jail constituted "infamous punishment, within the meaning of the rule above stated." That case has been frequently cited with approval, though the exact question now raised has not again been up for consideration. *Campbell v. Campbell,* 54 Wis. 90, 96, 11 N. W. 456; *Ellsworth v. Hayes,* 71 Wis. 427, 434, 37

N. W. 249. We can see no sufficient reason now to depart from a rule of so long standing, and therefore hold that the charge set forth in the complaint is actionable *per se,* because it asserts a crime punishable by imprisonment in the county jail, by force of sec. 4388, Stats. 1898.

*By the Court.*—Judgment reversed, and cause remanded for new trial.