GAGEN, Appellant, vs. DAWLEY and another, Respondents. SAME, Respondent, vs. SAME, Appellants.

*December 10, 1915—January 11, 1916.*

*Libel: Newspaper article: Punitory damages: Evidence: Harmless error: Justification: Instructions to jury: Liability of owner of newspaper: Excessive damages: Reduction.*

1. A newspaper article referring to a candidate for county treasurer as a man "who is liable to leave for Texas on short notice and leave a lot of unpaid bills behind," "who pays no bills," "a first-class dead-beat," "a scamp," "a crook," etc., is libelous.

2. In an action for libel the admission of evidence as to the financial condition of one of the defendants as bearing upon the question of punitory damages should not work a reversal of a judgment against that defendant for compensatory damages, where plaintiff's counsel told the jury to disregard any such evidence, the court charged that no punitory damages could be assessed against that defendant, and the compensatory damages assessed were very moderate.

3. Where statements in libelous newspaper articles to the effect that plaintiff did not pay his bills purported to be made upon positive knowledge, current opinion or general rumor to that effect could not be shown in justification.

4. A charge or a portion of a charge correct as a whole cannot be successfully challenged by showing that a part of a sentence thereof standing by itself would be incorrect.

5. The owner and publisher of a newspaper who exercised supervision over it and gave instructions as to its policy, was liable for libelous articles printed therein, even though he had turned it over to his son-in-law to edit, had cautioned him against inserting libelous articles, and had given him the earnings of the paper for some time.

6. A verdict for $500 as compensatory damages for publication of scurrilous newspaper articles was not in this case excessive, and it was error for the trial court to reduce the amount.

APPEALS from an order of the municipal court of Langlade county: T. W. HOGAN, Judge. *Reversed on plaintiff's appeal; defendants take nothing on their appeal.*

Action for libel. Plaintiff, *James Gagen,* of Indian blood on his mother's side, was a candidate for the office of county

treasurer of Langlade county.   On July 24, 1914, the defendants in the Weekly News Item, a paper published in Antigo, published of and concerning him the following:

"A man who won't pay a back subscription of several years' standing due to his home paper, doesn't look to us like a very safe man to put in as county treasurer.   Further particulars next week."

July 31st they published this item:

"The right man should be elected for county treasurer, and no man should be given a vote at the primaries whose past record will not bear close investigation.   We want no man for treasurer who is liable to leave for Texas on short notice and leave a lot of unpaid bills behind."

On August 14th they published on the editorial page the following article:

*"Nonpolitical Notice.*

"(The following has not been ordered nor will not be paid for by Heapjim-Afraid-of His-Face, as he pays no bills any where or at any time.)"

[Here follows an inch and a half cut of an Indian head and shoulders bedecked with feathers, beads, and earrings.]

"I hereby announce myself as a candidate for election to office that I may get my lunch hooks onto the county money bag.   I never did anything for the county but would like to get votes just the same.   Can refer voters to any of those who I owe old debts of several years' standing, and I believe myself to be a first-class dead-beat, and I would perhaps be able to pay some of those who I have defrauded in the past years. if I can con the voters to let me get away with the office.

"Yours for Graft,

"HEAPJIM-AFRAID-OF-HIS-FACE."

The front page of the same issue contained this item:

*"Look Out for Him.*

"We don't object to Indians or any other kind of a cigar sign running for office, they may be Turks or Zulus for all we care, but we do like to see them be men and not crooks as some Indians who seek office are.   Men who are elected to

public office should have a record that can stand investigation, and one that is without reproach.    One who goes foreflushing around, and owes a lot of old unpaid bills, should not receive the votes of any voter who has the welfare of the county at heart.    There are plenty of good men running for office so it will not be necessary to vote for a scamp.    When a crook of this stamp comes up to you with a sickly grin on his face and hands you a card which announces that he has the gall to run for office, ask him if you look like an easy mark."

The jury found for plaintiff and assessed $500 compensatory damages against both defendants and the sum of $250 punitory damages against the defendant *Fessenden*.    The court entered an order giving defendants the option to consent to a judgment against them of $300 compensatory damages, and $250 punitory damages against the defendant *Fessenden*, and in case they did not exercise such option within ten days then the plaintiff was given the option of entering judgment against the defendants for $250 compensatory damages and $250 punitory damages against the defendant *Fessenden*.    In case neither party exercised the option given a new trial would be ordered.    Neither party exercised the option given and a new trial was ordered.    Plaintiff appealed because the damages were reduced, and the defendants on the ground of alleged errors committed in the trial of the case.

For the plaintiff there were briefs by *Goodrick & Goodrick*, and oral argument by *Arthur B. Goodrick*.

For the defendants the cause was submitted on the brief of *Geo. W. Latta*.

VINJE, J.    Upon defendants' appeal no new questions are presented.    The published articles were clearly libelous. *Williams v. Hicks P. Co.* 159 Wis. 90, 150 N. W. 183; *Leuch v. Berger*, 161 Wis. 564, 155 N. W. 148, and cases cited.    And, as the jury found, they unmistakably referred to plaintiff.

Evidence of *Dawley's* financial condition was received as bearing upon the question of punitory damages. The court charged the jury that none could be assessed against him. The admission of such evidence is alleged as reversible error. There are two reasons why it is not. In the first place the court states that counsel for plaintiff told the jury that since they would be instructed not to assess punitory damages against *Dawley* they must disregard all evidence received as to his financial condition. In the second place, in view of the character of the articles published and of the very modest sum assessed as compensatory damages the evidence could not have prejudiced the defendants.

The court properly refused to permit defendants to justify by proof of current opinion or general rumor that plaintiff did not pay his bills. *Haskins v. Lumsden,* 10 Wis. 359; *Earley v. Winn,* 129 Wis. 291, 302, 109 N. W. 633. The statements in the articles to that effect did not purport to be made upon information, opinion, or rumor, but upon positive knowledge.

The charge was full and fair and correctly stated the law of the case. The defendants have excepted to a portion of a sentence and claim such portion is erroneous. The court charged:

"The paper's function is to guide, educate, and inform its readers, to stand for truth and to condemn error, and never to maliciously accuse falsely, or blacken one's character, or expose him to public hatred, disgrace, contempt, or ridicule, (nor produce injury to him in his business, trade, or profession. Those published articles here in evidence have done some of those things if not all.)"

The part in parentheses is excepted to and it is said to be erroneous because it tells the jury that plaintiff was injured in his business, trade, or profession when it is claimed the evidence showed he had none. It is obvious that the whole charge quoted does not so tell the jury. It tells them that the articles in question have done some of the things men-

tioned, if not all, and that was true.    A charge or a portion
of a charge correct as a whole cannot be successfully chal-
lenged by showing that a part of a sentence thereof standing
by itself would be incorrect.

The evidence shows that the defendant *Dawley* was the
owner and publisher of the paper, but that he had turned it
over to *Fessenden;* his son-in-law, to edit and had given him
the earnings of the paper for some time.    It appears, how-
ever, by *Dawley's* own testimony that he exercised supervision
over the paper and was in the office nearly every day or so;
that he gave instructions as to its policy and cautioned *Fes-
senden* against inserting libelous articles.    Under the rule
announced in *Smith v. Utley,* 92 Wis. 133, 65 N. W. 744,
and *Leuch v. Berger,* 161 Wis. 564, 155 N. W. 148, he was
properly held liable.    The defendants will take nothing upon
their appeal.

There is some basis for the claim that the trial court re-
duced the compensatory damages from $500 to $250 on the
theory that since, as he understood, the jury believed that
each defendant would be required to pay only one half of
$500, and since *Dawley* alone was financially responsible, he
should be required to pay only what the jury is claimed to
have intended.    There is nothing, however, in the record to
show the jury entertained such an idea, and even if they did
it would have been an erroneous one.    The question they
were called upon to decide was, how much damage had plaint-
iff sustained, not which of the defendants was able to pay it
nor how much they or either of them were able to pay.    But
whatever may have been the reason the reduction was un-
justified.    Plaintiff was a married man forty-six years old
and had lived with his wife in the community for ten years
and was engaged at the time of the trial in the abstract and
insurance business.    He had been municipal court reporter,
and had been a member of the Democratic county committee,
acting as secretary for twelve years.    No justification of any

of the charges made was established—hardly any attempted. Under such circumstances, bearing in mind the scurrilous nature of the publications, the jury assessed a very small sum for compensatory damages.  The court should have permitted the verdict to stand.

*By the Court.*—The defendants will take nothing upon their appeal.  Upon plaintiff's appeal the order is reversed, and the cause remanded with directions to enter judgment for plaintiff upon the verdict.  Plaintiff is entitled to his costs in this court upon both appeals, but only one attorney's fee of $25 will be taxed.